**Robert J. MARSHALL, Jr., Petitioner**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

No. 933 F.R. 2008.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 2012.
Decided Aug. 16, 2012.

Joseph C. Bright and Cheryl A. Upham, Philadelphia, for petitioner.

Kevin A. Moury, Senior Deputy Attorney General, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge BROBSON.

Petitioner Robert J. Marshall, Jr. (Marshall), pursuant to Pa. R.A.P. 1571(i), filed

exceptions to this Court's January 3, 2012, decision in *Marshall v. Commonwealth*, 41 A.3d 67 (Pa.Cmwlth.2012) (en banc) (*Marshall I* ). The dispute here focuses on the application of the Pennsylvania personal income tax (PIT)[1] to a nonresident, who invested as a limited partner in a Connecticut limited partnership, which owned a building in the City of Pittsburgh, which went into foreclosure.

Marshall initially petitioned this Court for review of a Board of Finance and Revenue (Board) Order, which confirmed a decision by the Department of Revenue (Revenue) imposing PIT on Marshall, a resident of Texas, for "income" from the foreclosure of a commercial property in the City of Pittsburgh (Property) in 2005. 600 Grant Street Associates Limited Partnership (Partnership), organized under Connecticut law, purchased the Property for approximately $360 million, $308 million of which the Partnership financed with a non-recourse Purchase Money Mortgage Note (PMM Note) secured only by the Property. Interest on the PMM Note accrued on a monthly basis at a rate of 14.55%, and, if monthly accrued interest exceeded the net operating income of the Partnership, accrued but unpaid interest would be deferred and compounded on an annual basis.

Marshall purchased a limited partnership interest (one unit) in the Partnership on or about January 24, 1985, for $148,889, although the Partnership returned a portion of Marshall's capital contribution in the amount of $6,184 in 1989. Marshall was a passive investor in the Partnership. He never participated in the management of the Partnership or the Property. The Partnership incurred losses from operations for financial accounting, federal income tax, and PIT purposes every year of its existence. For PIT purposes, the Partnership allocated its annual losses from operations to each partner, including Marshall. During this same time, Marshall had no other Pennsylvania source of income or loss, and he did not file a PIT return for tax years 1985 through 2004.

The lender foreclosed on the Property on June 30, 2005. At the date of foreclosure, the liability on the PMM Note had grown into a liability of more than $2.6 billion, of which only $308 million represented principal and approximately $2.32 billion represented accrued but unpaid interest.[2]

---

1. Pursuant to Section 302 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, added by the Act of August 4, 1991, P.L. 97, *as amended*, 72 P.S. § 7302, Pennsylvania residents and nonresidents are obligated to remit a tax on each dollar of income at a rate of 3.07%. For residents, that percentage applies to all income received in a taxable year. For nonresidents, the percentage applies only to income from sources within the Commonwealth. Section 302 of the Code provides, in full, for the imposition of the PIT as follows:

> (a) Every resident individual, estate or trust shall be subject to, and shall pay for the privilege of receiving each of the *classes of income hereinafter enumerated in section 303*, a tax upon each dollar of income received by that resident during that resi-

dent's taxable year at the rate of three and seven hundredths per cent.
> (b) Every nonresident individual, estate or trust shall be subject to, and shall pay for the privilege of receiving each of the *classes of income hereinafter enumerated in section 303* from sources within this Commonwealth, a tax upon each dollar of income received by that nonresident during that nonresident's taxable year at the rate of three and seven hundredths per cent.

(Emphasis added.)

2. Neither the Partnership nor its individual partners received any cash or other property as a result of the foreclosure. The Partnership had used approximately $121,600,000 of the amount of the accrued but unpaid interest to offset its income from operations that would otherwise have been subject to PIT.

That same year, the Partnership terminated operations and liquidated. Marshall did not recover his capital investment in the Partnership at foreclosure or liquidation, and he did not receive any cash or other property upon liquidation of the Partnership.

In 2008, Revenue assessed Marshall $165,055.24 in PIT for calendar year 2005 (inclusive of penalties and interest) as a result of the foreclosure on the Property (Assessment). Marshall filed a petition for reassessment with Revenue's Board of Appeals (BOA), and BOA ultimately struck the penalties from the Assessment but otherwise held that the amount of PIT due, with interest, was proper. Marshall appealed BOA's determination to the Board, which denied Marshall's request for relief from BOA's determination. Marshall then petitioned this Court for review.[3]

In *Marshall I*, a majority of the Court rejected Marshall's argument that he is not subject to PIT because he is not a resident of the Commonwealth and does not have sufficient minimum contacts with the Commonwealth, such that the Commonwealth may tax him without violating the Commerce and Due Process Clauses of the United States Constitution.[4] The majority concluded that imposition of the PIT on Marshall, as a limited partner of the Partnership, as a result of the disposition of the Property at foreclosure does not violate Marshall's due process rights. In reaching that conclusion, the majority considered significant that Marshall invested in a specific and limited purpose Connecticut limited partnership, whose "primary purpose was ownership and management" of a substantial commercial property in the City of Pittsburgh, and that he purposefully availed himself of the opportunity to invest in Pennsylvania real estate through a partnership.[5] (Stip. ¶ 11 & Ex. "G" at 3.)

In *Marshall I*, the majority further concluded that the foreclosure on the Property triggered PIT obligation under

---

Neither the Partnership nor Marshall derived any PIT benefit from the remainder.

3. In *Miller v. Commonwealth of Pennsylvania*, 18 A.3d 395 (Pa.Cmwlth.2011), we explained our role as follows:

> In tax appeals from the Board of Finance and Revenue, this Court functions as a trial court, and exceptions filed to its final order have the effect of an order granting reconsideration. *Consolidated Rail Corp. v. Commonwealth*, 679 A.2d 303, 304 (Pa.Cmwlth. 1996) (citing Pa. R.A.P. 1571(i)) ("Any party may file exceptions to an initial determination by the court under this rule within 30 days after the entry of the order to which exception is taken."). This Court reviews de novo the determinations of the Board. *Kelleher v. Commonwealth*, 704 A.2d 729, 731 (Pa.Cmwlth.1997). Stipulations of fact are binding upon both the parties and the Court. *Id.* However, this Court may draw its own legal conclusions. *Id.* (citing Pa. R.A.P. 1571). The issues presented in this case pose questions of statutory construction, for which our review is plenary. *Malt*

*Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 918 A.2d 171, 175 (Pa.Cmwlth.2007), *affirmed*, 601 Pa. 449, 974 A.2d 1144 (2009). *Miller*, 18 A.3d at 398 n. 5.

4. U.S. Const. art. I, § 8, cl. 3; U.S. Const. amend. XIV, § 1.

5. The majority also concluded that although Marshall presented a Due Process Clause challenge, he failed to set forth a challenge under the Commerce Clause, because he argued only that he lacked sufficient minimum contacts and did not present any separate argument in his brief directed to the Commerce Clause. *See Quill Corporation v. North Dakota*, 504 U.S. 298, 305–06, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (holding that "the Due Process Clause and the Commerce Clause are analytically distinct" and, their analysis should not be intermingled); *Purple Orchid, Inc. v. Pa. State Police*, 572 Pa. 171, 176–77, 813 A.2d 801, 804 (2002) (holding issue waived by failure to address and develop in appellate brief).

the governing statute and regulation.[6] The majority rejected Marshall's argument that the discharge of indebtedness that resulted from the disclosure did not result in a taxable gain because he did not receive actual cash or other property as a result of the foreclosure. The majority was persuaded that Revenue reasonably interpreted Section 103.13 of the Regulations as applying to real property foreclosures, even when the mortgagor does not receive any cash or other property (*i.e.*, proceeds) upon foreclosure. In so doing, the majority noted that Revenue's interpretation of its regulation is consistent with federal court cases interpreting Section 1001 of the Internal Revenue Code (IRC), 26 U.S.C. § 1001.[7] Section 1001 of the IRC addresses the computation of gain or loss and the amount realized from the sale or other disposition of property, and, similar to Section 103.13 of the Regulations, it references receipt of cash ("money") or "property (other than money)" in its calculation of a gain or loss from the sale or disposition of property. *See, e.g., Cox v. C.I.R.,* 68 F.3d 128, 133 (5th Cir.1995) ("It is a well-established rule that a foreclosure · sale constitutes a 'disposition of property' within the meaning of I.R.C. § 1001.").

The majority agreed with Revenue that Marshall's reliance on our prior decision in *Commonwealth v. Rigling,* 48 Pa.Cmwlth. 303, 409 A.2d 936 (1980), and the court of common pleas' decision in *Commonwealth v. Columbia Steel & Shafting Co.,* 83 Pa. D. & C. 326 (Dauphin 1951), *exceptions dismissed,* 62 Dauph. 296 (C.P. Dauphin Pa.1952), is misplaced, as those cases do not support Marshall's contention that imposition of an income tax on a taxpayer, like himself, who actually derived no income from his investment in a partnership, is prohibited. In *Marshall I,* the majority emphasized that the issue in this case is whether *the Partnership* experienced a taxable gain for PIT purposes upon foreclosure of the Property, not whether Marshall, individually, received a positive return on his investment in the Partnership. If the Partnership experienced a taxable gain, under Section 306 of the Code, added by the Act of August 31, 1971, P.L. 362, *as amended,* 72 P.S. § 7306, Marshall is responsible to pay his share (based on his percentage ownership interest in the Partnership) of the Partnership's tax liability on that gain. Whether Marshall suffered a loss of the amount he invested in the Partnership, though unfortunate, is simply not relevant to the PIT question before us in this case. *Rigling* and *Columbia Steel* do not compel a different conclusion.

6. *See* Section 302 of the Code; Section 303(a)(3) of the Code, added by the Act of August 31, 1971, P.L. 362, *as amended,* 72 P.S. § 7303(a)(3) (relating to income from disposition of property); and Section 103.13 of Revenue's regulations (Regulations), 61 Pa. Code § 103.13.

7. In interpreting Section 103.13 of the Regulation and its application in this setting, we are guided by the following:

Well-settled precedent establishes that courts defer to an administrative agency's interpretation of its own regulations unless that interpretation is unreasonable. The task of the reviewing court is limited to determining whether the agency's interpretation is consistent with the regulation and with the statute under which the regulation was promulgated. The United States Supreme Court has referred to this deference as the interpretive lawmaking power of administrative agencies and has characterized it as a "necessary adjunct" of the authority to promulgate and enforce regulations.

*Dep't of Envtl. Prot. v. N. Am. Refractories Co.,* 791 A.2d 461, 464–65 (Pa.Cmwlth.2002) (citations omitted) (citing *Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991)).

Having concluded that Revenue is not precluded from imposing a PIT on Marshall, the majority then considered in *Marshall I* the related question of whether Revenue appropriately calculated the PIT due in this case. In order to address this question, the majority determined whether Revenue used the appropriate amount realized and adjusted basis to arrive at the gain, if any, to be taxed. The majority noted a deficiency in the record regarding the adjusted basis, and, therefore, concluded that a remand was necessary for the recalculation of the PIT.

As to the amount realized, the majority noted that based upon the United States Supreme Court's decision in *CIR v. Tufts*, 461 U.S. 300, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983) (*Tufts*), the amount realized from the foreclosure of the Property must, at a minimum, include the unpaid balance of the principle amount of the PMM Note ($308 million) that the Partnership used to purchase the Property and which was included in the original basis of the Property. The majority then considered whether the *Tufts* rule—*i.e.*, the inclusion of discharge of indebtedness used to acquire property in the amount realized upon disposition—may be extended to interest accrued but unpaid on that indebtedness between acquisition and foreclosure. In considering this issue, the Court found persuasive the reasoning set forth in *Allan v. Commissioner of Internal Revenue*, 856 F.2d 1169 (8th Cir.1988), wherein the Court of Appeals of the Eighth Circuit stated that under *Tufts*, "the amount realized is the *full amount* of the nonrecourse liabilities which are discharged as a result of the transfer of the property." *Id.* at 1173 (emphasis added). The Eighth Circuit then addressed the question of whether HUD's advancement of interest payments, which pursuant to the terms of the mortgage increased the principal amount due of the loan, was a true debt obligation subject to *Tufts* treatment. The Eighth Circuit concluded that because the advances were "true loans properly added to the nonrecourse obligation," it followed "that those amounts are properly included in [t]he 'amount realized' under *Tufts*." Id. at 1174. In the case now before this Court, the Partnership had a similar arrangement with its lender, wherein the lender essentially financed the Partnership's interest payments. Based upon *Tufts* and its application in *Allan*, the majority could not say that Revenue's decision to include in the amount realized for PIT purposes the "full amount" of the nonrecourse liabilities discharged as a result of the foreclosure is unreasonable or contrary to the Code and the Regulations.

The majority also concluded that the so-called "tax benefit rule" did not require that the amount realized for PIT purposes be limited to only the portion of the accrued but unpaid interest that the Partnership was able to deduct in prior years to reduce its PIT liability. The majority rejected Marshall's argument because it conflicted with two principles embedded in Pennsylvania law. First, unlike federal tax law, which taxes income as a single class "gross income",[8] Pennsylvania law recognizes eight separate classes of income subject to PIT, and the Regulations expressly prohibit taxpayers from offsetting, or netting, income and losses across classes. Section 121.13(a) of the Regulations, 61 Pa.Code § 121.13(a). Income from sale or disposition of property, the income at issue in this case, is Section 303(a)(3) income under the Code. The interest on the PMM Note was an operations expense and thus could only be used,

---

8. *See* 26 U.S.C. § 61(a).

as it was, to reduce Section 303(a)(2) income under the Code—*i.e.,* net profits, or income from operations. To allow otherwise would unquestionably be acting contrary to the express and unambiguous terms of the Regulations, which prohibit offsetting a gain in one class of income (gain on sale or disposition of property) with a loss in another class of income (net profits, or income from operations).

Along a similar vein, in *Marshall I* the majority rejected Marshall's contention that the tax benefit rule should be applied to permit the Partnership to use twenty-two years' worth of net operating losses (NOLs) in an amount in excess of $2 *billion* to reduce the amount realized, and thereby reduce (or eliminate) the taxable gain from a single taxable event in 2005—the sale or disposition of the Property. The majority agreed with Revenue that Marshall's argument invites this Court to recognize a NOL carryover deduction under Pennsylvania tax law for PIT where the General Assembly, intentionally it appears, has chosen to exclude NOL carryover deductions from the calculation of PIT. To allow such a deduction would be contrary to the General Assembly's intent as clearly expressed in the Code.

The majority further reasoned that the tax benefit rule is not a generic doctrine prescribed by the courts to remedy every apparent or perceived inequity or unfairness in an income tax system, state or federal. To the contrary, it was created to address a *specific and particular inequity* in the tax system caused by the annual accounting system for taxation. The rule is premised on the notion that like transactions should have the same tax impact, whether they occur in a single year or over a span of two or more tax years—*i.e.,* transactional equity. The rule depends on a previously deducted expense that is "recovered" in a subsequent tax year. To

constitute a "recovery" of a prior year deduction, the event in the current tax year must be "fundamentally inconsistent with the premise on which the deduction was initially based—[t]hat is, if that event had occurred within the same taxable year, it would have foreclosed the deduction," such that it warrants application of the tax benefit rule. *See Hillsboro Nat'l Bank v. C.I.R.,* 460 U.S. 370, 383–84, 103 S.Ct. 1134, 75 L.Ed.2d 130 (1983). Such circumstances are not present in the case now before the Court, and, based on the foregoing, the majority could not say that Revenue's interpretation and application of Pennsylvania law was unreasonable.

As we stated in *Marshall I,* there is no doubt that Marshall believes that the result in this case is unfair or inequitable. But his belief is not based on inequity or unfairness of the kind that the tax benefit rule was created to remedy. Marshall does not explain how the annual accounting period for PIT contributed to or caused the Partnership to incur a PIT obligation that it would not have incurred had the interest deductions and the foreclosure taken place in the same tax year. Moreover, as explained above, no prior year deductions of interest in the PMM Note were "recovered" by the foreclosure. The foreclosure, from a tax perspective, is treated the same as a sale of the Property to a third-party for the full amount of the PMM Note obligation due at foreclosure. In short, Marshall is in the same position he would have been had the Partnership sold the Property in 2005 for $2,628,497,551.

Finally, in *Marshall I,* the majority considered Marshall's argument that application of the PIT to him in this instance is unconstitutional because it treats him differently from the partners who reside in Pennsylvania by permitting resident partners in the Partnership to offset any tax-

able gain from the foreclosure of the Property with the loss incurred by the partners upon liquidation of the Partnership. The majority rejected Marshall's constitutional challenge of disparate treatment, noting that Pennsylvania's PIT flows from the *limited* powers of Pennsylvania to tax non-residents. The majority explained that if Marshall had other Section 303(a)(3) losses from sources within the Commonwealth in 2005, he would have been permitted to offset those losses against any taxable gain attributed to the foreclosure of the Property, *notwithstanding his nonresident status*, but he did not.[9] Thus, Marshall's PIT obligation in 2005 is more reflective of his investment decisions and the constitutional limitations placed on Pennsylvania's ability to tax income of nonresidents from sources *outside* of the Commonwealth (*i.e.,* Marshall's partnership interest), than it is of Marshall's state of residence.

For those reasons, in *Marshall I,* the majority affirmed the Board's order in part, concluding that Revenue appropriately applied Pennsylvania law in assessing Marshall PIT for the calendar year 2005. The majority vacated the decision, however, and remanded the matter to the Board for a recalculation of the amount of the Assessment, because the majority was unable to verify whether the amount assessed was correct, due to the lack of evidence available to determine the adjusted basis at the time of the foreclosure.

Marshall filed exceptions to the majority's opinion, essentially advancing each

and every argument previously presented to the Court. Marshall's exceptions may be summarized as challenging the majority's opinion in *Marshall I,* as follows: (1) challenging the conclusion that Marshall had sufficient minimum contacts; (2) challenging the conclusion that Marshall waived the Commerce Clause argument; (3) challenging the application of the language in Section 103.13 of the Regulations, relating to "conversion of property into cash or other property;" (4) challenging the interpretation of Section 103.13 of the Regulations to include the outstanding purchase money mortgage within the amount realized; (5) challenging the conclusion that *Rigling* and *Columbia Steel* do not compel a different result; (6) challenging the majority's deference to Revenue's position as to the applicability of the tax benefit rule; (7) challenging the conclusion that *Tufts* and *Allan* do not require application of the tax benefit rule to exclude accrued but unpaid interest for which no tax benefit was received; (8) challenging the conclusion that application of the tax benefit rule to calculation of the amount realized would result in prohibited net operating losses and/or cross-class deduction; (9) challenging the conclusion that the PIT applied to resident taxpayers in the same manner that it applied to non-resident taxpayers; (10) challenging Revenue's reliance on Tax Bulletin 2005–02, relating to intangibles, to reach the conclusion that application of the PIT as a result of the

---

9. While operating income and expense of a partnership pass through to the partner as if he owned the assets and liabilities directly (in proportion to his partnership share), Section 306 of the Code, the purchase and sale of a partnership interest is a purchase and sale of an intangible asset. Because Marshall is a nonresident of the Commonwealth, his 2005 loss from the liquidation of his partnership interest is not income "from sources within the Commonwealth." *See* Section 302(b) of

the Code. Intangibles cannot be sourced to the Commonwealth for nonresidents. *See Complete Auto Transit v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Pennsylvania Personal Income Tax Bulletin 2005–02, § 2 (*see* Revenue's Br., App. "A"), provides that gains and losses from the sale of a partnership interest are gains and losses from the sale of an intangible asset and must be sourced outside the Commonwealth for a nonresident.

foreclosure did not violate the United States or Pennsylvania Constitutions; (11) challenging the decision to remand the matter for purposes of recalculating the PIT; and (12) challenging the majority opinion's affirmance of the order of the Board.

We believe the majority's decision in *Marshall I*, upholding the applicability of the PIT to a nonresident, who invested as a limited partner in a non-Pennsylvania limited partnership, based upon the foreclosure of a building owned by the limited partnership in Pennsylvania, fully and properly addresses the issues set forth in Marshall's exceptions. Moreover, the majority's decision in *Marshall I* properly rejected Marshall's arguments for the reasons fully set forth in *Marshall I* and reiterated herein.[10]

Accordingly, Marshall's exceptions to the majority opinion in *Marshall I* are overruled.

Judge SIMPSON dissents.

## ORDER

AND NOW, this 16th day of August, 2012, the exceptions filed by Petitioner Robert J. Marshall, Jr., to this Court's majority opinion and order in *Marshall v. Commonwealth*, 41 A.3d 67 (Pa.Cmwlth. 2012) (*Marshall I* ), are hereby OVERRULED. The order of the Board of Finance and Revenue (Board) in the above-captioned matter, dated December 16, 2008, is AFFIRMED IN PART. The

amount of tax assessed is VACATED and the matter is REMANDED to the Board for a recalculation of the amount of tax due in conformity with the Court's opinion in *Marshall I*.

Jurisdiction relinquished.

## DISSENTING OPINION BY Judge McCULLOUGH.

The Petitioner, Robert J. Marshall, Jr. (Marshall), a nonresident taxpayer, has filed a dozen exceptions to the Majority's decision to impose the Pennsylvania personal income tax (PIT) on his failed investment in a single property real estate limited partnership. The consequence of the Majority's decision is that Marshall will be compelled to pay PIT on his pro rata share of a discharge, through foreclosure, of non-recourse limited partnership debt totaling $2.6 billion, over two billion of which is accrued interest of exceptionally high and compounded rates (the original principal amount of the subject purchase money mortgage was $308 million). It is noteworthy that Marshall's total investment in this failed enterprise was $143,000 for an ownership interest of 0.151281%, which, owing to the Majority's decision, means that Marshall has "an amount realized" of about $4 million.

The Majority remands only for the purpose of ascertaining the adjusted basis to be offset this amount realized in order to recalculate the Department of Revenue's initial imposition of $165,055.25 of PIT (consisting of principal, interest and penal-

---

**10.** Marshall also takes exception to what it refers to as the majority's "failure to decide the issue of the first tax year to which the minimum depreciation provisions of Section 303(a.2)" of the Code are applicable. Although Marshall mentioned in his brief that the minimum depreciation provisions contained in Section 303(a.2) were added in 2002, in his brief he did not identify an issue relating to the first year to which Section

303(a.2) should be applied or provide any analysis or argument for the Court to consider. Marshall, therefore, waived this issue by not properly including it in his brief initially filed with this Court. *Purple Orchid*, 572 Pa. at 176–77, 813 A.2d at 804 (holding issue waived by failure to address and develop in appellate brief). Moreover, this issue may be addressed by the Board on remand as part of its recalculation of the PIT owed by Marshall.

ties) against Marshall for the 2005 tax year. It is noted from the foregoing that Revenue's assessment of PIT was well in excess of the total of Marshall's investment and upon remand, will likely be so again.

The rationale for the Majority's decision, which is reiterated in its denial of all of Marshall's exceptions, is that, by virtue of the foreclosure of the property, "Marshall is in the same position he would have been had the Partnership sold the property in 2006 for $2,628,497,551." (Slip op. at 10.) The fact of the matter is that the property was not sold and Marshall is not in the same position as he would be if it had been—he has completely lost his investment. Had the property sold for this amount, Marshall would have received a return of about $4 million on his investment and, hence, he would have ample funds to pay the PIT, the imposition of which, under those circumstances, would be without dispute.

Moreover, basing its rationale on the supposition of a sale of the property for more than $2.6 billion is unrealistic given that the property was purchased by the Partnership for $360 million and the figure used by the Majority is derived only from the roll-up of excessive and compounded interest charges into the principal amount of the purchase money mortgage note. There is nothing in the record to suggest that the property was worth anywhere near $2.6 billion, or for that matter, that even the original purchase price could have been recovered.

I dissented from the Majority's original decision in this matter, *Marshall v. Commonwealth*, 41 A.3d 67 (Pa.Cmwlth.2012), and in so doing detailed the reasons. While those reasons will not be reiterated at length here, they are nonetheless incorporated into this dissent as well. Suffice it to say, I disagree with the Majority's denial of all of the exceptions to its decision because that decision relies on non-binding decisions of the United States Supreme Court (*CIR v. Tufts*, 461 U.S. 300, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983)) and the Eighth Circuit (*Allan v. Commissioner of Internal Revenue*, 856 F.2d 1169 (8th Cir. 1988)), both of which interpret provisions of the federal Internal Revenue Code that are distinct from the PIT, and departs from the clear language of the PIT statute applicable here, as well as the economic reality of the situation. As such, the Majority's decision contravenes the cardinal precepts of statutory construction set forth in 1 Pa.C.S. § 1921(b) (when words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit) and in 1 Pa.C.S. § 1928(b)(3) (provisions imposing taxes shall be strictly construed). The Majority's decision also departs from the logic adhered to by this Court in *Commonwealth v. Rigling*, 48 Pa.Cmwlth. 303, 409 A.2d 936 (1980), i.e., a substance over form approach to tax cases that takes into consideration the economic realities of the situation.

The Majority's decision seeks to plug what Revenue claims would otherwise be a "huge hole" in the PIT. Whether such a hole would or would not exist if the PIT were applied in accordance with its terms obviously depends upon one's perspective, but it is not the role of the courts of this Commonwealth to correct the perceived mistakes of the General Assembly in matters of taxation, at least not in the first instance. *See Clifton v. Allegheny County*, 600 Pa. 662, 969 A.2d 1197 (2009).

I also believe that Marshall, as a nonresident taxpayer, has been treated differently than resident taxpayers who invested in the Partnership and unconstitutionally so pursuant to the Uniformity Clause of Article VIII, section 1 of the Pennsylvania Constitution.

Accordingly, I would grant Marshall's exceptions to the Majority's decision which challenge: (1) application of the language in Section 103.13 of Revenue's Regulations relating to "conversion of property into cash or other property"; (2) the interpretation of Section 103.13 of the Regulations to include the outstanding purchase money mortgage within the amount realized; (3) the Majority's conclusion that *Rigling* and *Commonwealth v. Columbia Steel & Shafting Co.*, 83 Pa. D. & C. 326 (Dauphin 1951), *exceptions dismissed*, 62 Dauph. 296 (Dauphin 1952), do not compel a different result; (4) the failure to apply the tax benefit rule; (5) the application of *Tufts* and *Allan* to this case; (6) the Majority's conclusion that it applied the PIT uniformly as to nonresidents and residents in this case; (7) the reliance on Tax Bulletin 2005–02 relating to intangibles to conclude that the application of the PIT as a result of the foreclosure did not violate either the U.S. or Pennsylvania Constitutions; (8) the Majority's decision to remand for purposes of recalculating the PIT; and (9) the Majority's affirmance of the order of the Board of Finance and Revenue.