# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ronald S. Leventhal, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 186 F.R. 2016 |
| | : | Argued: June 6, 2018 |
| Commonwealth of Pennsylvania, | : | |
| Respondent | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 213 F.R. 2016 |
| | : | Argued: June 6, 2018 |
| Ronald S. Leventhal, | : | |
| Respondent | : | |

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON                    FILED:  November 2, 2018

This is one of several related matters, challenging the assessment of Pennsylvania personal income tax (PIT) liability on nonresident investors on account of the 2005 foreclosure of a commercial property located in the City of Pittsburgh (Property).  We resolved the first round of appeals through en banc opinions and

orders issued in 2012, which the Pennsylvania Supreme Court affirmed in *Wirth v. Commonwealth*, 95 A.3d 822 (Pa. 2014), *cert. denied sub nom. Houssels v. Pennsylvania*, 135 S. Ct. 1405 (2015).[1]  Petitioner Ronald S. Leventhal (Taxpayer), a resident of the State of Florida, is among the second round of challengers.[2]

In a decision dated February 24, 2016, the Board of Finance and Revenue (Board) assessed Taxpayer's PIT liability on account of the foreclosure of the Property at $51,699, "plus appropriate interest, less any payments and credits to his account."  Both Taxpayer and the Pennsylvania Department of Revenue (Department) challenge aspects of the Board's decision.  We affirm.

## I.  BACKGROUND[3]

600 Grant Street Associates Limited Partnership (Partnership), organized under Connecticut law, purchased the Property for $360 million.  Of this $360 million purchase price, the Partnership financed $308 million with a Purchase Money Mortgage Note (PMM Note) secured only by the Property.  The PMM Note was nonrecourse, meaning that the Partnership and the lender agreed that the lender's only recourse for nonpayment of the obligations under the PMM Note was to pursue foreclosure of the Property.  As the name of the Partnership suggests, the Partnership's primary purpose was the ownership and management of the Property.

---

[1] Our lead opinion disposing of those earlier appeals was *Marshall v. Commonwealth*, 41 A.3d 67 (Pa. Cmwlth.) (en banc) (*Marshall I*), *exceptions overruled*, 50 A.3d 287 (Pa. Cmwlth. 2012) (en banc), *aff'd sub nom. Wirth v. Commonwealth*, 95 A.3d 822 (Pa. 2014), *cert. denied sub nom. Houssels v. Pennsylvania*, 135 S. Ct. 1405 (2015).

[2] Others in the second round include Craig S. and Christine L. Andrews (Docket Nos. 185, 212 F.R. 2016), John Thompson (Docket Nos. 188, 215 F.R. 2016), and Annette Sharpe (Docket Nos. 187, 214 F.R. 2016).

[3] The background is drawn from the parties' Joint Stipulation of Facts (Stipulation) and accompanying exhibits, which we adopt as our findings of fact in this *de novo* tax appeal.  In so doing, we note that the Stipulation is largely consistent with the facts as found by this Court in *Marshall I*.

Interest on the PMM Note accrued on a monthly basis at a rate of 14.55%. If the monthly accrued interest exceeded the net operating income of the Partnership, the Partnership was not required to pay the excess (*i.e.*, the amount of monthly accrued interest less monthly net operating income). Instead, the accrued but unpaid excess would be deferred and, thereafter, compounded on an annual basis subject to the same interest rate as the principal amount of the PMM Note. The original maturity date of the PMM Note was November 1, 2001. In 1998, the lender and the Partnership amended the PMM Note to extend the maturity date to January 2, 2005.

Taxpayer purchased a limited partnership interest (½ unit) in the Partnership on or about December 31, 1984, for $74,445. His ½ unit interest amounted to a 0.075641% interest in the Partnership. Taxpayer was a passive investor. He never participated in the management of the Partnership or the Property.

Over the years, the Partnership's net income from operations did not keep pace with projections. The Partnership incurred losses from operations for financial accounting, federal income tax, and PIT purposes every year of its existence. For PIT purposes, the Partnership allocated its annual losses from operations to each partner, including Taxpayer. Taxpayer filed Pennsylvania PIT returns for tax years 1985 through 2005, reporting thereon his pass-through share[4]

---

[4] Under Section 306 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of August 31, 1971, P.L. 362, 72 P.S. § 7306, partnerships as legal entities are not subject to PIT. Rather, the partners of the partnership pay PIT on their respective shares of the partnership's income or gain. Section 306 of the Code provides:

> Except as provided under section 306.2[ of the Code, Act of July 9, 2013, P.L. 270, 72 P.S. § 7306.2], a partnership as an entity shall not be subject to the tax imposed by this article, but income or gain of a member of a partnership in respect

of the Partnership losses "derived from or in the form of rents, royalties, patents and copyrights," which is one of eight separate classes of income subject to PIT under Section 303 of the Code.[5] In these tax years, Taxpayer had no offsetting income of the same class.

Because of the Partnership's dismal operations, the Partnership paid less monthly interest on the PMM Note than it had projected. Under the terms of the PMM Note, this led to a greater amount of accrued but unpaid interest over the years. According to the comprehensive "Offering Memorandum" shared with investors, the Partnership projected accrued but unpaid interest on the PMM Note at maturity (November 1, 2001, later extended to January 2, 2005) to be approximately $300 million. It also projected that proceeds upon sale of the Property at maturity would be sufficient to pay off the principal and accrued interest on the PMM Note, with excess funds available to distribute to the partners as a return on their investment. At the date of foreclosure, the Partnership had an accrued but unpaid interest obligation of approximately $2.32 billion. The Partnership had used approximately $121,600,000 of this amount to offset its income from operations that would otherwise have been subject to PIT. Neither the Partnership nor Taxpayer derived any PIT benefit from the remainder.

The lender foreclosed on the Property on June 30, 2005. By that time, what began as a $308 million Partnership liability on the PMM Note had grown into

---

of said partnership shall be subject to the tax and tax shall be imposed on his share, whether or not distributed, of the income or gain received by the partnership for its taxable year ending within or with the member's taxable year.

[5] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of August 4, 1991, P.L. 97, 72 P.S. § 7303. Specifically, Section 303(a)(4) of the Code provides for a class of income encompassing "[n]et gains or income derived from or in the form of rents, royalties, patents and copyrights."

a liability of more than $2.6 billion, of which only $308 million represented principal. Neither the Partnership nor its individual limited partners received any cash or other property as a result of the foreclosure. That same year, the Partnership terminated operations and liquidated. Taxpayer did not recover his capital investment in the Partnership at foreclosure or liquidation. Indeed, Taxpayer did not receive any cash or other property upon liquidation of the Partnership.

The Partnership reported a gain on foreclosure of the Property for tax year 2005 on federal Form 1065 and Pennsylvania Form PA-65 (information return), the overwhelming majority of which is attributable to the full amount of the PMM Note debt obligation (principal plus accrued but unpaid interest) discharged upon foreclosure. The Partnership reported to Taxpayer on Pennsylvania Schedule NRK-1 for tax year 2005 his pass-through share of the Partnership gain, $1,890,163, in the class of "[n]et gains or income from the disposition of property." Section 303(a)(3) of the Code.[6] It also reported to Taxpayer his pass-through share of the Partnership's operating losses that year as Section 303(a)(4) class income.

---

[6] Section 303(a)(3) of the Code is quite lengthy. The general class description provides:

> Net gains or income from disposition of property. Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real property, tangible personal property, intangible personal property or obligations issued on or after the effective date of this amendatory act by the Commonwealth; any public authority, commission, board or other agency created by the Commonwealth; any political subdivision of the Commonwealth or any public authority created by any such political subdivision; or by the Federal Government as determined in accordance with accepted accounting principles and practices.

In addition to providing this general description of the class, the General Assembly also expressly exempted several specific transactions from the class. *See* 72 P.S. § 7303(a)(3)(iii)-(vii). None of these exceptions, however, apply to the particular type of property disposition in this case.

In a Notice of Assessment dated April 15, 2008, the Department assessed Taxpayer $58,028 in PIT liability, plus penalties and interest of $5,096.72, for a total assessment of $63,124.72 (Assessment). In doing so, the Department determined that Taxpayer had a taxable gain from the foreclosure for PIT purposes in the amount of his pass-through share of the gain reported by the Partnership in its informational filing—$1,890,163. Taxpayer filed a petition for reassessment with the Department's Board of Appeals (BOA), challenging the Assessment. On August 21, 2015,[7] BOA rejected the majority of Taxpayer's arguments. It, nonetheless, abated the assessed penalties in full and recalculated the amount of gain realized by the Partnership upon disposition of the Property, accounting for annual straight-line depreciation of the Property dating back to the year the Partnership acquired it.[8] Taxpayer's pass-through share of the Partnership's revised gain was $1,825,769, thereby reducing Taxpayer's principal PIT liability from $58,028 to $56,050. The Department issued a Notice of Reassessment (Reassessment) consistent with BOA's determination.

Taxpayer appealed the Reassessment to the Board. Citing *Wirth*, Taxpayer contended that the tax benefit rule should be applied to exclude from the amount of the gain realized by the Partnership upon foreclosure that amount of prior year operating losses attributable to accrued but unpaid interest deductions for which the Partnership derived no tax benefit. Under Taxpayer's view, this would reduce

---

[7] BOA stayed consideration of Taxpayer's petition pending the Pennsylvania Supreme Court's decision in *Wirth*.

[8] As this Court noted in *Marshall I*, a gain for PIT purposes is recognized "where the amount realized from the disposition of the property exceeds the adjusted basis of the property at the time of disposition." *Marshall I*, 41 A.3d at 81. Further, depreciation, allowed or allowable, is one of the factors that determines the adjusted basis of property at disposition. Depreciation reduces the basis of the property.

the amount realized by the Partnership from $2.6 billion to just $429,600,000, reducing the taxable gain for the Partnership from $2,362,812,499 to just $163,914,948. Concomitantly, Taxpayer's PIT liability for his pass-through share of the Partnership's taxable gain would be reduced by approximately 93%.

Taxpayer also challenged BOA's determination that the Partnership was required to reduce its basis in the Property by straight-line depreciation dating back to the year that the Partnership acquired the Property. Section 303(a.2) was added to the Code by section 9 of Act 89 of 2002.[9] Section 34 of Act 89 of 2002 provides that Section 303(a.2) of the Code "shall apply to taxable years beginning after December 31, 2000." Taxpayer argued that this language meant that the minimum straight-line depreciation provision should only be applied for tax years 2001 and thereafter and, therefore, did not mandate a minimum downward basis adjustment for straight-line depreciation in years preceding the 2001 tax year. The Department offered a competing interpretation. In its view, Section 303(a.2) of the Code relates to the calculation of income. In this case, the income in question is the gain on disposition of the Property, which occurred in 2005. Accordingly, because the income event occurred after the effective date of Section 303(a.2), the minimum straight-line depreciation provision applied to calculate the adjusted basis of the Property from inception through foreclosure and, consequently, any gain upon disposition.

Taxpayer also argued that Pennsylvania lacks the authority to impose PIT liability on Taxpayer in this case, because doing so would violate the Commerce Clause of the United States Constitution.[10] Taxpayer also contended that, in reality,

---

[9] Act of June 29, 2002, P.L. 559.

[10] U.S. Const. art. I, § 8, cl. 3 (conferring on Congress power "[t]o regulate Commerce . . . among the several States").

he did not experience a taxable gain in 2005 and, therefore, should not have to pay PIT, citing *Commonwealth v. Rigling*, 409 A.2d 936 (Pa. Cmwlth. 1980). Finally, in a conclusory paragraph, Taxpayer cited a litany of state and federal constitutional violations and requested attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988.

The Board granted Taxpayer's request for relief from the Reassessment in part and denied it in part. The Board revised downward the amount of gain realized by the Partnership, agreeing with Taxpayer that the Partnership was not required to reduce its basis in the Property by straight-line depreciation until the 2001 tax year. Consequently, the Board revised downward Taxpayer's pass-through share of the Partnership's gain to $1,683,998, thereby reducing Taxpayer's principal PIT liability to $51,699. The Board, however, rejected Taxpayer's other challenges to the Reassessment. Taxpayer now appeals the Board's rejection of his tax benefit rule and Commerce Clause arguments, and the Department appeals the Board's interpretation and application of Section 303(a.2) of the Code, relating to straight-line depreciation.[11]

## II. DISCUSSION

This Court adequately addressed all of the issues in this appeal in our opinion in *Andrews v. Commonwealth*, ___ A.3d ___ (Pa. Cmwlth., Nos. 185, 212 F.R. 2016, filed _____, 2018). We incorporate that opinion by reference and reach the same conclusions in this case.

---

[11] Our standard of review in this matter is covered by Rule 1571 of the Pennsylvania Rules of Appellate Procedure. "Appeals taken from the Board of Finance and Revenue are *de novo* in nature, with no record being certified by the board." *Tool Sales & Serv. Co. v. Bd. of Fin. & Revenue*, 637 A.2d 607, 610 (Pa. 1993), *cert. denied sub nom. Tom Mistick & Sons, Inc. v. Pa.*, 513 U.S. 822 (1994). "Although the Court hears these cases under its appellate jurisdiction, the Court functions essentially as a trial court." *Scott Elec. Co. v. Commonwealth*, 692 A.2d 289, 291 (Pa. Cmwlth. 1997), *exceptions dismissed*, 704 A.2d 205 (Pa. Cmwlth. 1998).

### III.  CONCLUSION

For the reasons set forth above, we affirm the Board's assessment of Taxpayer's PIT liability in all respects.

                                                      _____

                                                      P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald S. Leventhal,                         :
                    Petitioner               :
                                             :
        v.                                   :   No. 186 F.R. 2016
                                             :
Commonwealth of Pennsylvania,                :
                    Respondent               :
                                             :
Commonwealth of Pennsylvania,                :
                    Petitioner               :
                                             :
        v.                                   :   No. 213 F.R. 2016
                                             :
Ronald S. Leventhal,                         :
                    Respondent               :

# **O R D E R**

AND NOW, this 2nd day of November, 2018, the order of the Board of Finance and Revenue is AFFIRMED.

Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ronald S. Leventhal,                         :
        Petitioner          :
                            :   No. 186 F.R. 2016
        v.                  :
                            :
Commonwealth of Pennsylvania,                :
        Respondent          :


Commonwealth of Pennsylvania,                :
        Petitioner          :
                            :   No. 213 F.R. 2016
        v.                  :
                            :   Argued:  June 6, 2018
Ronald S. Leventhal,                         :
        Respondent          :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge


## *OPINION NOT REPORTED*

CONCURRING OPINION
BY JUDGE McCULLOUGH              FILED:  November 2, 2018


        I join in the Majority's affirmance of the Board of Finance and
Revenue's application of section 303(a.2) of the Tax Reform Code of 1971[1]

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of June 29, 2002, P.L. 559, 72 P.S. §7303(a.2).

concerning minimum straight-line depreciation. However, I concur with the Majority's affirmance of the Board's refusal to apply the tax benefit rule to reduce the personal income tax (PIT) liability of Ronald S. Leventhal, for the reasons set forth in my Concurring Opinion in *Marshall v. Commonwealth of Pennsylvania*, ___ A.3d ___ (Pa. Cmwlth., Nos. 863 F.R. 2015 and 50 F.R. 2016, filed November 2, 2018).

_____
PATRICIA A. McCULLOUGH, Judge