# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| John K. Houssels, Jr., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 867 F.R. 2015 |
| | : | Argued: June 6, 2018 |
| Commonwealth of Pennsylvania, | : | |
| Respondent | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 49 F.R. 2016 |
| | : | Argued: June 6, 2018 |
| John K. Houssels, Jr., | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON                    FILED:  November 2, 2018

This personal income tax (PIT) matter returns to us following remand to the Board of Finance and Revenue (Board) for recalculation of the amount of Pennsylvania PIT owed by Petitioner John K. Houssels, Jr. (Taxpayer or Houssels). *See Houssels v. Commonwealth* (Pa. Cmwlth., No. 757 F.R. 2008, filed Jan. 3, 2012)

(en banc) (*Houssels I*), *exceptions overruled*, (Pa. Cmwlth. No. 757 F.R. 2008, filed Aug. 16, 2012) (en banc) (*Houssels II*), *aff'd sub nom. Wirth v. Commonwealth*, 95 A.3d 822 (Pa. 2014) (*Wirth*), *cert. denied sub nom. Houssels v. Pennsylvania*, 135 S. Ct. 1405 (2015). On remand, the Board reassessed Taxpayer's tax liability at $103,397, "plus appropriate penalties and interest, less any payments and credits on his account."[1] Both Taxpayer and the Pennsylvania Department of Revenue (Department or Revenue) challenge aspects of the Board's reassessment on remand. We affirm.

## I. BACKGROUND

### A. *Houssels I, Houssels II, and Wirth*

Taxpayer, a resident of the State of Nevada, invested as a limited partner in 600 Grant Street Associates Limited Partnership (Partnership), a Connecticut limited partnership, which owned a building in the City of Pittsburgh (Property) that went into foreclosure in 2005. In 2008, the Department assessed Taxpayer for his pass-through share of the Partnership's income[2] realized from the

---

[1] The Board issued two orders on remand, an original order dated September 16, 2015, and a corrected order dated November 12, 2015. Neither party explains the occasion or necessity for the corrected order. For purposes of our disposition, then, we will treat both as a single order.

[2] With respect to taxability of partners, Section 306 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of August 31, 1971, P.L. 362, 72 P.S. § 7306, provides, in relevant part:

> [A] partnership as an entity shall not be subject to the tax imposed by this article, but the income or gain of a member of the partnership in respect to said partnership shall be subject to the tax and tax shall be imposed on his share, whether or not distributed, of the income or gain received by the partnership for its taxable year ending within or with the member's taxable year.

2

foreclosure of the Property. Section 303 of the Code[3] sets forth eight separate classes of income subject to the PIT. The class of taxable income at issue here is "[n]et gains or income from disposition of property." Section 303(a)(3) of the Code.[4]

In *Houssels I*, we summarized the details of financial arrangement giving rise to the foreclosure and the assessed PIT liability therefrom:

> [Partnership], organized under Connecticut law, purchased the Property for $360 million. Of this $360 million purchase price, the Partnership financed $308 million with a Purchase Money Mortgage Note (PMM Note) secured only by the Property. The PMM Note was nonrecourse, meaning that the Partnership and the lender agreed that the lender's only recourse for nonpayment of the obligations under the PMM Note was to pursue foreclosure of the Property. As the name of the Partnership suggests, the Partnership's primary purpose was the ownership and management of the Property.
>
> Interest on the PMM Note accrued on a monthly basis at a rate of 14.55%. If, however, the monthly accrued interest exceeded the net operating income of the Partnership, the Partnership was not required to pay the

---

[3] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of August 4, 1971, P.L. 97, 72 P.S. § 7303.

[4] Section 303(a)(3) of the Code, setting forth the class of income at issue here is quite lengthy. The general class description provides:

> Net gains or income from disposition of property. Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real property, tangible personal property, intangible personal property or obligations issued on or after the effective date of this amendatory act by the Commonwealth; any public authority, commission, board or other agency created by the Commonwealth; any political subdivision of the Commonwealth or any public authority created by any such political subdivision; or by the Federal Government as determined in accordance with accepted accounting principles and practices.

In addition to providing this general description of the class, the General Assembly also expressly exempted several specific transactions from the class. *See id.* § 7303(a)(3)(iii)-(vii). None of these exceptions, however, apply to the particular type of property disposition in this case.

excess (*i.e.*, the amount of monthly accrued interest less monthly net operating income). Instead, the accrued but unpaid excess would be deferred and, thereafter, compounded on an annual basis subject to the same interest rate as the principal amount of the PMM Note. The original maturity date of the PMM Note was November 1, 2001. In 1998, the lender and the Partnership amended the PMM Note to extend the maturity date to January 2, 2005.

Houssels purchased a limited partnership interest of approximately 0.151281% (one unit) in the Partnership on or about October 19, 1984, for $148,889—$1,589 in cash and a promissory note of $147,300. Houssels paid the promissory note in full on or about March 11, 1992. Houssels was a passive investor in the Partnership. He never participated in the management of the Partnership or the Property.

Over the years, the Partnership's net income from operations did not keep pace with projections. The Partnership actually incurred losses from operations for financial accounting, federal income tax, and PIT purposes every year of its existence. For PIT purposes, the Partnership allocated its annual losses from operations to each partner, including Houssels.

Because of the Partnership's dismal operations, the Partnership paid less monthly interest on the PMM Note than it had projected. Under the terms of the PMM Note, this led to a greater amount of accrued but unpaid interest over the years. According to the Offering Memorandum, the Partnership projected accrued but unpaid interest on the PMM Note at maturity (November 1, 2001, later extended to January 2, 2005) to be approximately $300 million. It also projected that upon sale of the Property at maturity, there would be enough proceeds to pay off the principal and accrued interest on the PMM Note, with additional funds available to distribute to the partners as a return on their investment. At the date of foreclosure, the Partnership had an accrued but unpaid interest obligation of approximately $2.32 billion. The Partnership had used approximately $121,600,000 of this amount to offset its income from operations that would otherwise have been subject to PIT. Neither the

4

Partnership nor Houssels derived any PIT benefit from the remainder.

The lender foreclosed on the Property on June 30, 2005. By that time, what began as a $308 million Partnership liability on the PMM Note had grown into a liability of more than $2.6 billion, of which only $308 million represented principal. Neither the Partnership nor its individual partners received any cash or other property as a result of the foreclosure. That same year, the Partnership terminated operations and liquidated. Houssels did not recover his capital investment (original investment less return of capital) in the Partnership at foreclosure or liquidation. Indeed, Houssels did not receive any cash or other property upon liquidation of the Partnership.

Revenue assessed PIT for calendar year 2005 as a result of the foreclosure on the Property (Assessment). Houssels filed an appeal with Revenue's Board of Appeals (BOA) on June 29, 2007. On December 28, 2007, . . . BOA denied Houssels' appeal. Houssels appealed BOA's determination to the Board, which denied his request for relief from . . . BOA's determination on September 19, 2008.

*Houssels I*, slip op. at 1-2 (footnotes omitted) (record citations omitted).

Taxpayer appealed the Board's determination to this Court. In his appeal, Taxpayer raised issues identical to those raised by the petitioner and addressed by this Court in *Marshall v. Commonwealth*, 41 A.3d 67 (Pa. Cmwlth.) (en banc) (*Marshall I*), *exceptions overruled*, 50 A.3d 287 (Pa. Cmwlth. 2012) (en banc) (*Marshall II*), *aff'd sub nom. Wirth v. Commonwealth*, 95 A.3d 822 (Pa. 2014) (*Wirth*), *cert. denied*, 135 S. Ct. 140 (2015). Incorporating by reference our decision in *Marshall I*, this Court, in *Houssels I*, affirmed the Board's assessment of PIT, but remanded the matter to the Board for determination of the adjusted basis of the Property at foreclosure and recalculation of the PIT due from Taxpayer. Incorporating by reference our decision in *Marshall II*, this Court overruled

5

Taxpayer's exceptions in *Houssels II*. In *Wirth*, the Pennsylvania Supreme Court affirmed our decision on every issue.

## B. Proceedings Following Remand

After the Supreme Court issued its decision in *Wirth*, Taxpayer filed, or refiled, Pennsylvania PIT returns for tax years 1985 through 2005, reporting thereon his pass-through share of the operating losses of the Partnership during those years. (Joint Supplemental Stipulation of Facts ¶ 3(b) (dated Oct. 25, 2017).) The Court has reviewed copies of the returns, filed under seal. As reflected in the parties' stipulations, the Partnership took deductions on its federal tax forms, including a deduction for the accrued but unpaid interest on the PMM Note, which contributed to the Partnership's annual operating loss and, consequently, zero tax liability from inception through foreclosure. (Joint Stipulation ¶¶ 40, 53, 54.)

Taxpayer reported on the filed/refiled Pennsylvania returns his pass-through share of the Partnership's "[n]et income (loss) from rental real estate activities," as reported to him by the Partnership on IRS Schedule K-1 (Form 1065) for each of these years. Taxpayer disclosed these annual losses on his Pennsylvania Individual Income Tax Returns as Section 303(a)(4) class income—"Net gains or income derived from or in the form of rents, royalties, patents and copyrights." 72 P.S. § 7303(a)(4).

Before the Board on remand, with respect to calculating the adjusted basis of the Property upon foreclosure, the parties' dispute focused on depreciation. Specifically, Taxpayer and the Department offered competing views on how to apply Section 303(a.2) of the Code, 72 P.S. § 7303(a.2). This section allows for a depreciation deduction against income: "In computing income, a depreciation deduction shall be allowed for the exhaustion, wear and tear and obsolescence of

6

property being employed in the operation of a business or held for the production of income." Section 303(a.2) of the Code. It also provides how to calculate the adjusted basis of depreciated property:

> The basis of property shall be reduced, but not below zero, for depreciation by the greater of:
>
> (1) The amount deducted on a return and not disallowed, but only to the extent the deduction results in a reduction of income; and
>
> (2) The amount allowable using the straight-line method of depreciation computed on the basis of the property's adjusted basis at the time placed in service, reasonably estimated useful life and net salvage value at the end of its reasonably estimated useful economic life, regardless of whether the deduction results in a reduction of income.

Section 303(a.2) of the Code. Both parties refer to this provision as the "minimum straight-line depreciation provision," because regardless of the extent to which a taxpayer benefits from the allowable depreciation deduction, the basis of the depreciated property must be reduced, at a minimum, by the amount of depreciation allowable using the straight-line method of depreciation.

The parties' dispute centered around the effective date of the minimum straight-line depreciation provision. Section 303(a.2) was added to the Code by section 9 of Act 89 of 2002.[5] Section 34 of Act 89 of 2002 provides that Section 303(a.2) of the Code "shall apply to taxable years beginning after December 31, 2000." Taxpayer argued that this language meant that the minimum straight-line depreciation provision should only be applied for tax years 2001 and thereafter and, therefore, did not mandate a minimum downward basis adjustment for straight-line depreciation in years preceding the 2001 tax year. The Department

---

[5] Act of June 29, 2002, P.L. 559.

7

offered a competing interpretation. In its view, Section 303(a.2) relates to the calculation of income. In this case, the income in question is the gain on disposition of the Property, which occurred in 2005. Accordingly, because the income event occurred after the effective date of Section 303(a.2), the minimum straight-line depreciation provision applied to calculate the adjusted basis of the Property from inception through foreclosure and, consequently, any gain upon disposition.

The Board refused to address Taxpayer's tax benefit rule argument, holding that this Court and the Pennsylvania Supreme Court ruled finally on the tax benefit rule's application in this case and that the tax benefit rule was not within the scope of the remand order. With respect to the depreciation issue, the Board sided with Taxpayer's interpretation. Taxpayer now appeals the Board's refusal to consider his tax benefit rule argument, and the Department appeals the Board's interpretation and application of Section 303(a.2) of the Code.

## II. DISCUSSION

This Court adequately addressed all of the issues in this appeal in our opinion in *Marshall v. Commonwealth of Pennsylvania*, ___ A.3d ___ (Pa. Cmwlth., Nos. 863 F.R. 2015 and 50 F.R. 2016, filed _____). We incorporate that opinion by reference and reach the same conclusions in this case.

## III. CONCLUSION

For the reasons set forth above, we affirm the Board's assessment of Taxpayer's PIT liability in all respects.

_____
P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John K. Houssels, Jr.,                          :
                      Petitioner         :
                                           :
                  v.                            :   No. 867 F.R. 2015
                                           :
Commonwealth of Pennsylvania,           :
                       Respondent         :
                                           :
Commonwealth of Pennsylvania,           :
                       Petitioner         :
                                           :
                  v.                            :   No. 49 F.R. 2016
                                           :
John K. Houssels, Jr.,                          :
                       Respondent         :

# **O R D E R**

AND NOW, this 2nd day of November, 2018, the order of the Board of Finance and Revenue is AFFIRMED.

Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.

 

<br>

                                                                           
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John K. Houssels, Jr.,      :
     Petitioner   :
           :  No. 867 F.R. 2015
           :
     v.      :
           :
Commonwealth of Pennsylvania,  :
     Respondent  :

Commonwealth of Pennsylvania,  :
     Petitioner   :
           :  No. 49 F.R. 2016
           :
     v.      :  Argued: June 6, 2018
           :
John K. Houssels, Jr.,      :
     Respondent  :


BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
     HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE P. KEVIN BROBSON, Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE ELLEN CEISLER, Judge


***OPINION NOT REPORTED***

CONCURRING OPINION
BY JUDGE McCULLOUGH       FILED: November 2, 2018


   I join in the Majority's affirmance of the Board of Finance and Revenue's application of section 303(a.2) of the Tax Reform Code of 1971[1]

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of June 29, 2002, P.L. 559, 72 P.S. §7303(a.2).

concerning minimum straight-line depreciation.  However, I concur with the Majority's  affirmance of the Board's refusal to apply the tax benefit rule to reduce the personal income tax (PIT) liability of John K. Houssels, Jr., for the reasons set forth in my Concurring Opinion in *Marshall v. Commonwealth of Pennsylvania*, ___ A.3d ___ (Pa. Cmwlth., Nos. 863 F.R. 2015 and 50 F.R. 2016, filed November 2, 2018).

_____
PATRICIA A. McCULLOUGH, Judge