Commonwealth of Pennsylvania v. Vance F. Rigling and Mabel S. Rigling, his wife, Appellants.

Argued September 12, 1979, before President Judge Bowman and Judges Crumlish, Jr., Mencer, Rogers, Blatt, DiSalle and Craig. Judges Wilkinson, Jr. and MacPhail did not participate.

*Lloyd R. Persun,* with him *Shearer, Mette & Woodside,* for appellants.

*Vincent J. Dopko,* Deputy Attorney General, for appellee.

Opinion by President Judge Bowman, January 4, 1980:

Vance F. Rigling and Mabel S. Rigling, his wife (taxpayers), have filed a petition for review of an order by the Board of Finance and Revenue (Board) sustaining an assessment by the Department of Revenue (Department) in the amount of $998.00, with interest, on account of their Pennsylvania Personal Income Tax for 1972, levied pursuant to Article III of the Tax Reform Code of 1971 (Code).[1] We adopt as our findings of fact in this de novo tax appeal the facts as stipulated by the parties.

These facts disclose that taxpayers, in preparing Schedule D of their 1972 Personal Income Tax return, attempted to minimize taxable income by using the May 31, 1971 close of business day fair market value to calculate gain resulting from the sale of two separate holdings of stock, but acquisition cost to calculate gain on all other Schedule D sales, whichever would yield lesser gain. By letter dated October 24, 1973, the Department informed taxpayers that May 31, 1971 fair market value could not be used to calculate gains on Schedule D, and that it would use acquisition cost to recalculate taxpayers' gain as to the two affected stocks. Taxpayers challenged the Department's action before the Board in a proceedings only collaterally involved in this appeal.

During the pendency of that challenge before the Board, the legislature amended Section 303(a)(3) of the Code, 72 P.S. §7303(a)(3),[2] to provide, retroac-

---

[1] Act of March 4, 1971, P.L. 6, *as amended,* added by Act of August 31, 1971, P.L. 362, *as amended,* 72 P.S. §7301 *et seq.*

[2] Act of June 17, 1974, P.L. 325. The amendatory language is as follows:  ,

tively, that the basis of property acquired prior to June 1, 1971, would be determined using June 1, 1971, as the acquisition date, and that the basis of property acquired after June 1, 1971, would be determined using the actual acquisition date. By order of August 27, 1974, the Board granted taxpayers' petition for refund as to the two stocks on which taxpayers had calculated gain using the May 31, 1971 close of business day fair market value.

Subsequent to this ruling by the Board, the Department, pursuant to the provisions of the 1974 amendment, recalculated taxpayers' gains on all other 1972 Schedule D stocks acquired prior to June 1, 1971, substituting June 1, 1971 value for actual acquisition cost, and assessed taxpayers additional tax on the additional gains thus indicated. Both the Department's Board of Reassessment and the Board sustained the Department's subsequent assessment. Hence this appeal.

In their brief and in oral argument before this Court taxpayers relied on several different theories to advance what are, in essence, two basic arguments: first, that the Board's initial grant of refund as to the tax assessed on the two 1972 Schedule D stocks, on which taxpayers calculated gain using the May 31, 1971 fair market value, precluded subsequent reassessment of tax by the Department on all other 1972 Schedule D stocks; and second, that the Department's subsequent assessment constitutes a misapplication of the

For the purpose of this act, for the determination of the basis of any property, real and personal, if acquired prior to June 1, 1971, the date of acquisition shall be adjusted to June 1, 1971 as if the property had been acquired on that date. If the property was acquired after June 1, 1971, the actual date of acquisition shall be used in determination of the basis.

Section 2 of the Act provides: "This act shall take effect immediately and be retroactive to June 1, 1971."

1974 basis amendment to the extent that it imposes a tax on nonexistent income.

We are not persuaded by taxpayers' first argument that the Board's refund as to two of the 1972 Schedule D stocks precluded subsequent assessment by the Department as to other stocks. In support of their position taxpayers assert that the Department's payment of refund in compliance with the Board's first ruling rendered moot the issues involved in the subsequent assessment, that the Department's exclusive remedy, if aggrieved by the Board's first ruling, was to appeal pursuant to Sections 503 and 1104 of The Fiscal Code[3] and that the subsequent assessment was barred by principles of res judicata. In so arguing, taxpayers erroneously assume that the Department's subsequent assessment was an attempt to relitigate issues previously adjudicated by the Board.

The undisputed facts here show that the Department, in making its subsequent assessment, simply recomputed the gain on all of taxpayers' Schedule D property, exclusive of the two stocks affected by the Board's ruling, using the same basis provision used by the Board when it found for the taxpayers as to gain on the two stocks initially in dispute. Such a recomputation was neither mooted by the Department's payment of a refund as to the first two stocks,[4] nor inconsistent with the appeal provisions of Sections 503 and 1104 of The Fiscal Code, which provisions we

---

[3] Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §§503, 1104.

[4] The cases cited by taxpayers in support of this contention, *WFIL Broadcasting Co. v. Philadelphia*, 358 Pa. 208, 56 A.2d 75 (1948) and *Department of Revenue v. West Penn Power Co.*, 18 Pa. Commonwealth Ct. 173, 334 A.2d 805 (1975), are inapposite. In those cases, the taxing authorities involved paid refunds after having been ordered to do so by reviewing bodies and then attempted to appeal the decisions ordering refund, which appeals had been rendered moot by compliance with the orders. In the present case the Department never attempted to appeal the Board's order.

have held to be exclusive remedies only where subsequent Department action is an attempt to unilaterally reverse a prior Board decision, *Westinghouse Broadcasting Co. v. Board of Finance and Revenue,* 14 Pa. Commonwealth Ct. 59, 321 A.2d 413 (1974), nor barred by principles of res judicata, *see Department of Environmental Resources v. Pennsylvania Power Co.,* 34 Pa. Commonwealth Ct. 546, 384 A.2d 273 (1978). Under the facts presented here, we conclude that the Board's initial ruling as to two stocks on taxpayers' Schedule D was a limited one involving a narrow issue; it did not preclude the Department's subsequent review of gains on other stocks on Schedule D.

We now turn to taxpayers' second argument, an attack upon the substance of the Department's subsequent assessment with regard to other Schedule D gains. Taxpayers contend that the Department, in substituting June 1, 1971 value for actual acquisition cost on all property acquired prior to June 1, 1971, even in instances in which actual acquisition cost exceeded June 1, 1971 value, taxed income which taxpayers never in fact realized, and to that extent misapplied the 1974 basis amendment. We agree.

As originally enacted, Section 303(a)(3) of the Code, which provides for the computation of net gains or income from disposition of property for purposes of personal income taxation, was, aside from the mandate that "accepted accounting principles" be used, silent as to the method to be used in calculating the basis of property. This section was amended in 1974, *see* note 2 *supra,* to provide retroactively a basis measured by June 1, 1971 fair market value for property acquired prior to June 1, 1971, and a basis measured by acquisition cost for property acquired subsequent to June 1, 1971.

In making its subsequent assessment, the Department applied this amended basis provision to the com-

putation of gains reported on Schedule D of taxpayers' 1972 return without regard to the fact that taxpayers' acquisition costs for many of the holdings of stock listed on that schedule were greater than the fair market value of those stocks as of June 1, 1971.[5] As a result, the Department subtracted from sale price the artificially low June 1, 1971 basis and imputed to taxpayers a recognized gain that was greater than the gain they actually realized.

A simple example of the Department's application of the basis provision in this case is as follows: assume that taxpayers purchased property in 1960 for $10, that the property had a fair market value on June 1, 1971, of $5, and that taxpayers sold it on December 31, 1971, for $15. Though taxpayers actually realize a gain of $5, the Department, literally applying the language of the 1974 basis amendment, would measure taxpayers' gain from the $5 June 1, 1971 value and find a "gain" of $10. We do not believe that the legislature intended such a result.

When interpreting the provisions of a statute to ascertain the intent of the General Assembly, we look first to the face of the statute itself. Article III of the Code, 72 P.S. §7301 *et seq.,* imposes a tax on certain classes of resident individuals' "income." Section 301(j) of the Code, 72 P.S. §7301(j), defines income as "compensation, net profits, gains, dividends, interest or income enumerated and classified under Section 303 of this article." Section 303(a)(3) of the Code, 72 P.S. §7303(a)(3), which addresses the class of income here at issue, net gains or income from dis-

[5] The stipulated facts disclose that in 16 separate transactions involving 3 different stocks, the difference between taxpayers' realized gain using acquisition cost and their recognized gain as computed by the Department using June 1, 1971 value was significant. As reflected in the assessment, the Department is attempting to tax $35,727.44 of gain never in fact realized by taxpayers.

position of property, embodies the contested provisions for determining the basis of property acquired prior to June 1, 1971, but provides no further elucidation as to the meaning of income.

Where, as here, no clear definition of a key word is provided by the statute, Section 1903(a) of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §1903(a) directs that the word shall be construed according to its "common and approved usage." While we attempt no exhaustive exposition of the meaning of income for purposes of Pennsylvania income taxation, we do not hesitate to assert that, contrary to the Department's application of the basis provision, the "common and approved" definition of income does not include a benefit which taxpayers have not and will not ever realize. *See* Black's Law Dictionary 906 (4th ed. rev. 1968) ; Webster's Third New International Dictionary 1143 (1966). Sections 1921(c)(6) and 1922(1) of the Statutory Construction Act, 1 Pa. C.S. §§1921(c)(6), 1922 (1), which permit us to consider the consequence of a particular interpretation and to presume that the General Assembly did not intend a result that is absurd, impossible of execution, or unreasonable, supply additional support for this construction.

Since the unrealized and unrealizable "benefit" taxed by the Department is not income within the meaning of Article III of the Code, and since the taxation of such as "income" would be, in our view, both absurd and unreasonable, we hold that the General Assembly did not intend through its amendment to Section 303(a)(3) to substitute June 1, 1971 value for actual acquisition cost of property acquired prior to that date in those instances in which actual acquisition cost exceeds June 1, 1971 value. To put it another way, we construe the Section 303(a)(3) basis language to mean that, as to property acquired prior

to June 1, 1971, gain should be measured using either value at acquisition date or value as of June 1, 1971, whichever is greater; in no case may the June 1, 1971 value be imposed to create and tax gain never in fact realized by the taxpayer.

In so holding, we note that both the Supreme Court of the United States and the appellate courts of other states have considered income tax statute basis provisions similar to Pennsylvania's basis provision and have interpreted them consistent with the construction we here adopt.

The Supreme Court's construction of Section 2(c) of the Revenue Act of 1916, ch. 463, §2(c), 39 Stat. 756 (1916) in *Walsh v. Brewster,* 255 U.S. 536 (1921) is particularly instructive. In that case the Court was confronted with a challenge to an assessment made pursuant to a statute almost identical to Section 303 (a)(3) of our Code. Like the 1974 basis amendment to Section 303(a)(3), the basis provision embodied in Section 2(c) of the Revenue Act of 1916 was added subsequent to the passage of the act which initially imposed the income tax, but which was silent on the issue of how to calculate basis for property acquired prior to the effective date of the tax.[6] The tax col-

---

[6] The Revenue Act of 1913, ch. 16, 38 Stat. 166 (1913), enacted pursuant to the sixteenth amendment, was effective as of March 1, 1913. It was not until the enactment of the Revenue Act of 1916, ch. 463, 39 Stat. 756 (1916) that any reference was made to the basis to be used in determining gain on the disposition of assets acquired prior to March 1, 1913, however. Section 2(c) of the 1916 Act provided:

> For the purpose of ascertaining the gain derived from the sale or other disposition of property, real, personal, or mixed, acquired before March first, nineteen hundred and thirteen, the fair market price or value of such property as of March first, nineteen hundred and thirteen, shall be the basis for determining the amount of such gain derived.

*See generally* 3A J. Mertens, Law of Federal Income Taxation §21. 155 (1977).

lector in that case applied the basis provision in a manner identical to the way in which the Department did here, finding a $111,670 "gain" on property which the taxpayer acquired at $231,300 in 1902 and 1903 and sold at $276,150 in 1916, but which had a fair market value on March 1, 1913, of $164,480. Relying on the holding in *Goodrich v. Edwards,* 255 U.S. 527, 535 (1921),[7] that the contested statute imposed tax on "the proceeds of the sale of personal property to the extent only that *gains* are derived therefrom by the vendor" (emphasis in original), the Court in *Walsh* found that the taxpayer could be taxed only on $44,850, the difference between acquisition cost and sale price. Congress subsequently amended the basis provision[8] to provide that if March 1, 1913 value is less than acquisition cost, income is the amount realized over acquisition cost.

Numerous state courts have construed analogous basis provisions in state income tax statutes in conformance with the reasoning of the Supreme Court in *Walsh* and *Goodrich.* *State v. Flenner,* 236 Ala. 228, 181 So. 786 (1938); *Brandon v. State Revenue Commission,* 54 Ga. App. 62, 186 S.E. 872 (1936); *Brown v. Commissioner of Corporations and Taxation,* 242 Mass. 242, 136 N.E. 188 (1922); *People ex rel. Klauber v. Wendell,* 196 App. Div. 827, 188 N.Y.S. 301 (1921); *Falk v. Wisconsin Tax Commission,* 201 Wis. 292, 230 N.W. 64 (1930). *See also Thorpe v. Mahin,* 43 Ill. 2d 36, 250 N.E. 2d 633 (1969), wherein the Illinois Supreme Court reached a similar conclusion in interpreting a statute which was silent as to the method to be used in calculating basis. Though we, of

---

[7] *Goodrich* was a companion case of *Walsh* decided the same day.

[8] The Revenue Act of 1921, ch. 136 §202(b), 42 Stat. 227 (1921). A similar provision was included in each successive revenue act, in the 1939 and 1954 Internal Revenue Codes, and can now be found at I.R.C. §1053.

course, are not bound by any of these decisions in construing the basis provision in our statute, we find them to be well reasoned and persuasive.

Finally, because we construe Section 303(a)(3) of the Code to mean that gain on property acquired prior to June 1, 1971, be measured using either value at acquistion date or value as of June 1, 1971, whichever is greater, we dismiss as inapplicable taxpayers' subsidiary argument that the Department's application of that section constitutes an improper retroactive imposition of tax. Under our interpretation, Section 303(a)(3) cannot operate to impose additional tax.

For the foregoing reasons, we must set aside the order of the Board refusing taxpayers' petition for review and order that the Department's assessment of tax and interest thereon be stricken in its entirety.

ORDER

Now, January 4, 1980, unless exceptions are filed within thirty (30) days of the date hereof, the order of the Board of Finance and Revenue refusing the petition for review of Vance F. Rigling and Mabel S. Rigling is reversed and set aside, the assessment by the Department of Revenue at K-0571 in the amount of $998.00, with interest, is stricken in its entirety, and judgment is entered in favor of petitioner.