# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert J. Marshall, Jr., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 863 F.R. 2015 |
| | : | Argued: June 6, 2018 |
| Commonwealth of Pennsylvania, | : | |
| Respondent | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 50 F.R. 2016 |
| | : | Argued: June 6, 2018 |
| Robert J. Marshall, Jr., | : | |
| Respondent | : | |

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE BROBSON        FILED: November 2, 2018

This personal income tax (PIT) matter returns to us following remand to the Board of Finance and Revenue (Board) for recalculation of the amount of Pennsylvania PIT owed by Petitioner Robert J. Marshall, Jr. (Taxpayer or Marshall). *See Marshall v. Commonwealth*, 41 A.3d 67 (Pa. Cmwlth.) (en banc) (*Marshall I*), *exceptions overruled*, 50 A.3d 287 (Pa. Cmwlth. 2012) (en banc) (*Marshall II*), *aff'd sub nom. Wirth v. Commonwealth*, 95 A.3d 822 (Pa. 2014) (*Wirth*), *cert. denied sub*

*nom. Houssels v. Pennsylvania*, 135 S. Ct. 1405 (2015). On remand, the Board reassessed Taxpayer's PIT liability at "$102,620.00, plus appropriate penalties and interest, less any payments and credits on his account."[1] Both Taxpayer and the Pennsylvania Department of Revenue (Department or Revenue) challenge aspects of the Board's reassessment on remand. We affirm.

## I. BACKGROUND

### A. *Marshall I, Marshall II, and Wirth*

Taxpayer, a resident of the State of Texas, invested as a limited partner in 600 Grant Street Associates Limited Partnership (Partnership), a Connecticut limited partnership, which owned a building in the City of Pittsburgh (Property) that went into foreclosure in 2005. In 2008, the Department assessed Taxpayer for his pass-through share of the Partnership's income[2] realized from the foreclosure of the Property. As we noted in *Marshall I*, Section 303 of the Code[3] sets forth eight separate classes of income subject to the PIT. The class of taxable income at issue

---

[1] The Board issued two orders on remand, an original order dated September 16, 2015, and a corrected order dated November 12, 2015. Neither party explains the occasion or necessity for the corrected order. For purposes of our disposition, then, we will treat both as a single order.

[2] With respect to taxability of partners, Section 306 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of August 31, 1971, P.L. 362, 72 P.S. § 7306, provides, in relevant part:

> [A] partnership as an entity shall not be subject to the tax imposed by this article, but the income or gain of a member of the partnership in respect to said partnership shall be subject to the tax and tax shall be imposed on his share, whether or not distributed, of the income or gain received by the partnership for its taxable year ending within or with the member's taxable year.

[3] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of August 4, 1971, P.L. 97, 72 P.S. § 7303.

2

here is "[n]et gains or income from disposition of property." Section 303(a)(3) of the Code.[4]

In *Marshall I*, we summarized the details of the financial arrangement giving rise to the foreclosure and the assessed PIT liability therefrom:

> [Partnership], organized under Connecticut law, purchased the Property for $360 million. Of this $360 million purchase price, the Partnership financed $308 million with a Purchase Money Mortgage Note (PMM Note) secured only by the Property. The PMM Note was nonrecourse, meaning that the Partnership and the lender agreed that the lender's only recourse for nonpayment of the obligations under the PMM Note was to pursue foreclosure of the Property. As the name of the Partnership suggests, the Partnership's primary purpose was the ownership and management of the Property.
>
> Interest on the PMM Note accrued on a monthly basis at a rate of 14.55%. If, however, the monthly accrued interest exceeded the net operating income of the Partnership, the Partnership was not required to pay the excess (*i.e.*, the amount of monthly accrued interest less monthly net operating income). Instead, the accrued but unpaid excess would be deferred and, thereafter, compounded on an annual basis subject to the same

---

[4] Section 303(a)(3) of the Code, setting forth the class of income at issue here is quite lengthy. The general class description provides:

> Net gains or income from disposition of property. Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real property, tangible personal property, intangible personal property or obligations issued on or after the effective date of this amendatory act by the Commonwealth; any public authority, commission, board or other agency created by the Commonwealth; any political subdivision of the Commonwealth or any public authority created by any such political subdivision; or by the Federal Government as determined in accordance with accepted accounting principles and practices.

In addition to providing this general description of the class, the General Assembly also expressly exempted several specific transactions from the class. *See id.* § 7303(a)(3)(iii)-(vii). None of these exceptions, however, apply to the particular type of property disposition in this case.

interest rate as the principal amount of the PMM Note. The original maturity date of the PMM Note was November 1, 2001. In 1998, the lender and the Partnership amended the PMM Note to extend the maturity date to January 2, 2005.

Marshall purchased a limited partnership interest (one unit) in the Partnership on or about January 24, 1985, for $148,889—$5,889 in cash and a promissory note of $143,000. His one unit limited partnership interest amounted to a 0.151281% interest in the Partnership. Marshall paid the promissory note in full on or about May 13, 1992. In March 1989, the Partnership returned a portion of Marshall's capital contribution in the amount of $6,184. Marshall was a passive investor in the Partnership. He never participated in the management of the Partnership or the Property.

Over the years, the Partnership's net income from operations did not keep pace with projections. The Partnership actually incurred losses from operations for financial accounting, federal income tax, and PIT purposes every year of its existence. For PIT purposes, the Partnership allocated its annual losses from operations to each partner, including Marshall. During this same time, Marshall had no other Pennsylvania source of income or loss. Marshall thus did not file a PIT return for tax years 1985 through 2004.

Because of the Partnership's dismal operations, the Partnership paid less monthly interest on the PMM Note than it had projected. Under the terms of the PMM Note, this led to a greater amount of accrued but unpaid interest over the years. According to the Offering Memorandum, the Partnership projected accrued but unpaid interest on the PMM Note at maturity (November 1, 2001, later extended to January 2, 2005) to be approximately $300 million. It also projected that upon sale of the Property at maturity, there would be enough proceeds to pay off the principal and accrued interest on the PMM Note, with additional funds available to distribute to the partners as a return on their investment. At the date of foreclosure, the Partnership had an accrued but unpaid interest obligation of approximately $2.32 billion. The Partnership had used approximately $121,600,000 of this

4

amount to offset its income from operations that would otherwise have been subject to PIT. Neither the Partnership nor Marshall derived any PIT benefit from the remainder.

The lender foreclosed on the Property on June 30, 2005. By that time, what began as a $308 million Partnership liability on the PMM Note had grown into a liability of more than $2.6 billion, of which only $308 million represented principal. Neither the Partnership nor its individual partners received any cash or other property as a result of the foreclosure. That same year, the Partnership terminated operations and liquidated. Marshall did not recover his $142,705 capital investment (original investment less return of capital) in the Partnership at foreclosure or liquidation. Indeed, Marshall did not receive any cash or other property upon liquidation of the Partnership.

In a Notice of Assessment dated March 28, 2008, Revenue assessed Marshall $165,055.24 in PIT for calendar year 2005 (inclusive of penalties and interest) as a result of the foreclosure on the Property (Assessment). Marshall filed a petition for reassessment with Revenue's Board of Appeals (BOA), challenging the imposition and, in the alternative, amount of PIT set forth in the Assessment. On September 12, 2008, BOA struck the penalties from the Assessment, but otherwise held that the amount of PIT due, with interest, was proper. Marshall appealed BOA's determination to the Board, which denied Marshall's request for relief from . . . BOA's determination on December 16, 2008.

*Marshall I*, 41 A.3d at 70-72 (footnotes omitted) (record citations omitted).

Taxpayer appealed the Board's December 16, 2008 determination to this Court. In his appeal, Taxpayer first questioned whether any PIT could be imposed where neither the Partnership nor the individual partners received cash or other property upon foreclosure. Taxpayer also contended *Commonwealth v. Rigling*, 409 A.2d 936 (Pa. Cmwlth. 1980), and *Commonwealth v. Columbia Steel & Shafting Co.*, 83 Pa. D. & C. 326 (Dauphin 1951), *exceptions dismissed*,

5

62 Dauph. 296 (C.P. Pa. 1952), prohibit the imposition of an income tax on a taxpayer, like himself, who actually derived no income from his investment. Taxpayer also raised a disparate treatment argument, claiming he was being treated differently from the partners who resided in Pennsylvania. Taxpayer further claimed that the tax benefit rule should be applied to reduce his PIT liability. Finally, Taxpayer argued that imposition of the PIT on him, a nonresident, would violate the Commerce and Due Process Clauses of the United States Constitution.[5] *Marshall I*, 41 A.3d at 72-73.

In *Marshall I*, we analyzed and ultimately rejected each of Taxpayer's challenges. Taking them out of order, we first held that Taxpayer waived his Commerce Clause challenge. *Id.* at 73. We also rejected Taxpayer's due process/minimum contacts challenge, finding that Taxpayer purposefully availed himself of the opportunity to invest in Pennsylvania real estate through the Partnership, establishing "sufficient minimum contacts for the imposition of a tax on Marshall and his fellow partners upon disposition by the Partnership of the Property." *Id.* at 74.

With respect to Taxpayer's claim, in essence, that the foreclosure of the Property did not yield a taxable event because neither he nor the Partnership received any cash or property (or income from investment), this Court sided with the Department's interpretation of Section 303(a)(3) of the Code and the related regulation, 61 Pa. Code § 103.13. We noted the similarities between the language in the Code and regulation to that found in the federal counterpart, Section 1001 of the Internal Revenue Code of 1986 (IRC), 26 U.S.C. § 1001. We also observed

---

[5] U.S. Const. art. I, § 8, cl. 3; U.S. Const. amend. XIV, § 1.

6

Taxpayer's accurate concession that for federal income tax purposes, a foreclosure on a nonrecourse mortgage[6] is treated as a sale or exchange for an amount equal to the outstanding balance of the mortgage. *Marshall I*, 41 A.3d at 78 (citing *Cox v. Comm'r of Internal Revenue*, 68 F.3d 128 (5th Cir. 1995)). Accordingly, we affirmed the Department's construction and application of the Code and the regulation to real property foreclosures, "even when the mortgagor does not receive any cash or other property (*i.e.*, proceeds) upon foreclosure." *Id.*

We also rejected Taxpayer's reliance on the holdings in *Rigling* and *Columbia Steel*. Neither of those cases dealt with the taxation of a partner's pass-through share of the partnership's gain on disposition of real property. Although we recognized that Taxpayer lost the entirety of the value of his investment in the Partnership upon liquidation of the Partnership, we noted that Taxpayer's loss on his investment in the Partnership should not be conflated with whether the Partnership experienced a taxable gain for PIT purposes upon the foreclosure of the Property. *Id.* at 78-80. The latter is what is at issue in this case. Although both involve the disposition of property, one tangible and the other intangible, because Taxpayer is a nonresident, the loss on his partnership investment (intangible property) must be sourced to his home state (Texas) and, therefore, cannot be taken into account for purposes of calculating his PIT liability in Pennsylvania. *Id.* at 97-98.

---

[6] As noted above, "nonrecourse" means only that the lender and the borrower agree that the lender will look only to the collateral pledged to secure the loan, here the Property, in the event of a default and will not pursue the borrower for any deficiency. *See* Black's Law Dictionary 1057 (6th ed. 1990). It represents a covenant between the borrower and the lender. Our research, however, has yielded no authority for the proposition that this covenant also shields the borrower from the tax consequences flowing from the discharge of the debt.

Concluding that the Department could impose PIT on Taxpayer for his pass-through share of the Partnership's gain from the disposition of the Property by foreclosure, we turned our attention to Taxpayer's challenges to the method of calculating his PIT liability. We noted that "a gain is recognized where the amount realized from the disposition of the property exceeds the adjusted basis of the property at the time of disposition." *Id.* at 81. With respect to the adjusted basis, we held that the record was inadequate for the Court to determine the adjusted basis of the Property at foreclosure, a point with which the parties agreed. We, therefore, remanded the matter to the Board for recalculation. *Id.*

Turning to the more contested question of how to calculate the amount realized *by the Partnership*[7] as a result of the foreclosure, we noted that based upon the United States Supreme Court's decision in *Commissioner of Internal Revenue v. Tufts*, 461 U.S. 300 (1983), the amount realized from the foreclosure must at a minimum include the unpaid balance on the principal of the PMM Note ($308 million). We then held that the *Tufts* rule extended to accrued but unpaid interest on the principal amount of the loan as of foreclosure, citing the United States

---

[7] As noted previously, under Section 306 of the Code, the gain experienced by the Partnership is taxable to the partners in their proportionate share. So, here, we must be focused not on a particular gain experienced by Taxpayer, as a partner, but on whether and, if so, to what extent the *Partnership* experienced a gain upon the foreclosure of the Property. On this point, the United States Court of Appeals for the Third Circuit observed:

> [A] partnership is required to file its own federal income tax return. Accordingly, for the purpose of computing income and deductions, "the partnership is regarded as an independently recognizable entity apart from the aggregate of its partners." After the partnership's income and deductions are calculated and reported it is a conduit through which income and deductions are distributed to individual partners.

*Pleasant Summit Land Corp. v. Comm'r of Internal Revenue*, 863 F.2d 263, 272 (3d Cir. 1988) (quoting *U.S. v. Basye*, 410 U.S. 441, 448 (1973)), *cert. denied*, 493 U.S. 901 (1989).

Court of Appeals for the Eighth Circuit's decision in *Allan v. Commissioner of Internal Revenue*, 856 F.2d 1169 (8th Cir. 1988). Accordingly, this Court agreed with the Department that the *entire* amount of the Partnership's debt satisfied at foreclosure is includable in the amount realized. *Marshall I*, 41 A.3d at 86.

We next addressed Taxpayer's contention that the Department must apply the "tax benefit rule"[8] to reduce the amount realized from the foreclosure by that portion of the Partnership's annual deductions for accrued but unpaid interest on the PMM Note over a twenty-year period that contributed to the Partnership's net operating losses over the same period, but for which the Partnership derived no tax benefit. Taxpayer cited nothing in the Code, the Department's regulations, or precedent from this Court or the Pennsylvania Supreme Court recognizing the tax benefit rule as a component of state tax law in the Commonwealth. Instead, he relied on portions of a Department publication, the "PIT Guide," wherein the Department discussed the tax benefit rule and its application. According to the parties'

---

[8] The tax benefit rule "is a product of federal common law, created by our federal courts in response to anomalies arising out of application of the annual accounting system for taxes contained in the IRC." *Marshall I*, 41 A.3d at 91. As the Pennsylvania Supreme Court summarized in *Wirth*:

> In general, the rule applies when a *deduction* of some sort for a loss is taken by a taxpayer in one year, only to have the amount previously deducted *recovered* in a following tax year. Normally, the taxpayer would be responsible for including the recovered income on his personal income tax return for the year in which recovery occurred. The tax benefit rule states, however, that the recovery of the previously deducted loss is not includible to the extent that the earlier deduction did not reduce the amount of the tax owed in the year the initial deduction was taken. Put differently, the "rule permits exclusion of the recovered item from income [in a subsequent tax year] so long as its initial use as a deduction did not provide a tax saving."

*Wirth*, 95 A.3d at 845-46 (citations omitted) (emphasis added) (quoting *Alice Phelan Sullivan Corp. v. United States*, 381 F.2d 399, 401-02 (Ct. Cl. 1967)).

9

stipulation of facts, over a span of twenty-two consecutive tax years, "the Partnership used only $121,600,000 of the approximately $2.32 billion of unpaid interest that accrued over that period, along with other deductions, to offset fully its *gross receipts from operations*, leaving the Partnership with $0.00 in PIT liability for operating income during those tax years." *Id.* at 87 (emphasis added).

Relating Taxpayer's request to the Code, Taxpayer, citing the tax benefit rule, sought to offset the Partnership's 2005 Section 303(a)(3) income (gain on sale or disposition of property) by an unused/orphaned operations expense deduction (accrued but unpaid interest on the PMM Note) from prior tax years, which, under the Code, could only have been used in the year it was booked to reduce income within the same class, not Section 303(a)(3) class income.[9] In *Marshall I*, we thoroughly examined the genesis under federal law of the tax benefit rule and Taxpayer's efforts to use it in this particular circumstance to reduce his Pennsylvania PIT burden. *Id.* at 87-96.

Ultimately, but without deciding whether the tax benefit rule can or should be applied when calculating Pennsylvania PIT,[10] we declined to apply the rule in this context for several reasons, which we summarized in *Marshall II*:

> The majority [in *Marshall I*] concluded that the so-called "tax benefit rule" did not require that the amount realized for PIT purposes be limited to only the portion of the accrued but unpaid interest that the Partnership was able to deduct in prior years to reduce its PIT liability. The majority rejected Marshall's argument because it conflicted with two principles embedded in Pennsylvania law. First, unlike federal tax law, which taxes income as

---

[9] *See Marshall I*, 41 A.3d at 89; *Wettach v. Commonwealth*, 620 A.2d 730 (Pa. Cmwlth. 1993) (upholding validity of offset prohibition in Department's regulations), *aff'd per curiam*, 677 A.2d 831 (Pa. 1995); 61 Pa. Code §§ 101.1 (definition of "income"), 121.13(a).

[10] *See Marshall I*, 41 A.3d at 95 n.35.

10

a single class "gross income[,"] Pennsylvania law recognizes eight separate classes of income subject to PIT, and the Regulations expressly prohibit taxpayers from offsetting, or netting, income and losses across classes. Income from sale or disposition of property, the income at issue in this case, is Section 303(a)(3) income under the Code. The interest on the PMM Note was an operations expense and thus could only be used, as it was, to reduce Section 303(a)(2) income under the Code—*i.e.,* net profits, or income from operations. To allow otherwise would unquestionably be acting contrary to the express and unambiguous terms of the Regulations, which prohibit offsetting a gain in one class of income (gain on sale or disposition of property) with a loss in another class of income (net profits, or income from operations).

Along a similar vein, in *Marshall I* the majority rejected Marshall's contention that the tax benefit rule should be applied to permit the Partnership to use twenty-two years' worth of net operating losses (NOLs) in an amount in excess of $2 *billion* to reduce the amount realized, and thereby reduce (or eliminate) the taxable gain from a single taxable event in 2005—the sale or disposition of the Property. The majority agreed with Revenue that Marshall's argument invites this Court to recognize a NOL carryover deduction under Pennsylvania tax law for PIT where the General Assembly, intentionally it appears, has chosen to exclude NOL carryover deductions from the calculation of PIT. To allow such a deduction would be contrary to the General Assembly's intent as clearly expressed in the Code.

The majority further reasoned that the tax benefit rule is not a generic doctrine prescribed by the courts to remedy every apparent or perceived inequity or unfairness in an income tax system, state or federal. To the contrary, it was created to address a *specific and particular inequity* in the tax system caused by the annual accounting system for taxation. The rule is premised on the notion that like transactions should have the same tax impact, whether they occur in a single year or over a span of two or more tax years—*i.e.,* transactional equity. The rule depends on a previously deducted expense that is "recovered" in a subsequent tax year. To constitute a

11

"recovery" of a prior year deduction, the event in the current tax year must be "fundamentally inconsistent with the premise on which the deduction was initially based—[t]hat is, if that event had occurred within the same taxable year, it would have foreclosed the deduction," such that it warrants application of the tax benefit rule. Such circumstances are not present in the case now before the Court . . . .

*Marshall II*, 50 A.3d at 291-92 (footnote omitted) (quoting *Hillsboro Nat'l Bank v. Comm'r of Internal Revenue*, 460 U.S. 370, 383-84 (1983)).[11]

After addressing and rejecting Taxpayer's tax benefit rule argument, the Court also rejected Taxpayer's disparate impact argument. The Court recognized that partners of the Partnership in Pennsylvania were able to offset their proportionate share of the Partnership's gain on disposition of the Property by the investment loss each partner incurred upon liquidation of the Partnership. Both the Property (tangible) and investment interest in the Partnership (intangible) are property, subject to Section 303(a) class income treatment under the Code.

---

[11] It merits emphasis here that by rejecting Taxpayer's arguments, particularly his plea to apply the tax benefit rule, the Department, as approved by this Court, calculated the amount realized by the Partnership as a result of the foreclosure consistent with how the Partnership reported its gain from the foreclosure for federal tax purposes, as reflected in the parties' stipulation of facts:

> 54. For federal income tax purposes, a foreclosure on a nonrecourse mortgage is treated as a sale or exchange of the foreclosed property for an amount equal to the outstanding balance of the mortgage.

> 55. For federal income tax purposes, the *Partnership reported a gain on the foreclosure of the Property in the amount of $2,362,812,499*, which was the difference between the outstanding balance of the nonrecourse PMM Note and the federal tax basis of the Property.

(Joint Stipulation of Facts ¶¶ 54, 55, dated Feb. 11, 2011 (emphasis added).)

*See Marshall I*, 41 A.3d at 97.[12]  Taxpayer conceded, however, that because he is

not a resident of Pennsylvania, the gain/loss of disposition of his partnership interest,

as a matter of law, must be sourced to his home state of Texas.  We explained:

"Pennsylvania simply lacks the authority, statutorily and constitutionally, to tax

income of nonresidents from sources *outside of* the Commonwealth.  It likewise

cannot be compelled to take into account losses from sources outside of the

Commonwealth when assessing PIT on nonresidents."  *Id.* (emphasis in original).

For this reason, we rejected the disparate treatment argument, concluding:

> Marshall's PIT obligation in 2005 is more reflective of his
> investment decisions and the constitutional limitations
> placed on Pennsylvania's ability to tax income of
> nonresidents from sources *outside* of the Commonwealth
> (*i.e.,* Marshall's partnership interest), than it is of
> Marshall's state of residence.  We, therefore, reject his
> constitutional challenge of disparate treatment.

*Id.* at 97-98 (emphasis in original).

In *Wirth*, the Pennsylvania Supreme Court affirmed our decision on

every issue.  Specifically, the Supreme Court affirmed our determination that

_____

[12] According to the Supreme Court in *Wirth*, this Court in *Marshall I* suggested "that the disposition of the Property and the investment loss are two different classes of income." *Wirth*, 95 A.3d at 851.  Respectfully, this is not an accurate characterization of our position in *Marshall I*. Perhaps the Supreme Court was conflating our position on (a) operating losses of the Partnership, which would pass through to the partners and offset income of the same class that the partner had in the same year; with (b) losses of an investment (the partnership interest) upon dissolution of the partnership.  *See id.* at 852 n.27 (agreeing with this Court that (a) operating losses and (b) gains from sale or disposition of property fall within separate classes of income under Code and thus cannot be offset).  As recounted above, in *Marshall I* this Court noted explicitly that gains and losses from the sale or disposition of tangible (the Property) and intangible (the Partnership investment) property *both* fall within the same class of income—Section 303(a)(3) under the Code. As a result, investors in the Partnership that resided in Pennsylvania were able to offset their pass-through share of the gain upon disposition of the Property with their investment loss in the Partnership, as both occurred in the same tax year.  Taxpayer, because he was not a resident of Pennsylvania in 2005, could not benefit from the same offset.  This was our reasoning, which the Supreme Court generally followed in its affirming opinion.  *Id.* at 853-58.

13

Taxpayer waived his Commerce Clause argument. *Wirth*, 95 A.3d at 837. It also affirmed our rejection of Taxpayer's due process/minimum contacts argument. *Id.* at 839. The Supreme Court also agreed that, applying *Tufts*, gain on a nonrecourse foreclosure is taxable under Section 303(a)(3) of the Code. *Id.* at 839-40. Turning to the calculation of the amount realized, the Supreme Court, without "reluctance," agreed, consistent with *Allan*, that the entirety of the nonrecourse debt discharged upon foreclosure, principal and interest, should be included in the amount realized. *Id.* at 849-50.

With respect to the tax benefit rule, the Supreme Court opined that the Department "has *seemingly* incorporated the rule into Pennsylvania Law through Table 16-2 [of the PIT Guide]." *Id.* at 848 (emphasis added). Nonetheless, it rejected its application in this particular context: "[A]s the Commonwealth Court did, we easily agree with the Department that the exclusionary arm of the tax benefit rule simply has no application in the instant appeal." *Id.* The Supreme Court explained that pursuant to federal law, the tax benefit rule requires

> the attempted exclusion of realized gain be related to a deduction without tax consequence from a prior year. Appellants have not pointed to any jurisprudence, regulation, or Department policy that states otherwise. Through all of their protestations regarding the mandatory application of the exclusionary arm of the tax benefit rule, Appellants never address this salient point, nor, more importantly, when they attempted to take the required deduction. Thus, in our view, there simply can be no application of the tax benefit rule in this case.

*Id.* at 848-49 (footnote omitted). In an accompanying footnote, the Supreme Court did not foreclose the possibility that the tax benefit rule could be applied in another factual scenario, perhaps even with respect to a nonrecourse mortgage foreclosure situation: "We merely hold that Appellants have failed to demonstrate how the rule

14

could possibly be employed here given their failure to indicate where a failed reduction in the assessment of tax liability occurred in a year prior to 2005." *Id.* at 848 n.24.

Finally, the Supreme Court rejected Taxpayer's disparate treatment argument, concluding that the Department's "refusal . . . to grant Appellants' [sic] a deduction of their assessed PIT based upon the investment loss is constitutionally permitted." *Id.* at 858. The Supreme Court concluded with the following mandate:

> [T]he order of the Commonwealth Court sustaining the assessment of PIT is affirmed, and this matter will be remanded to the Board of Finance and Revenue in accord with the Commonwealth Court's opinion for calculation of the adjusted basis in the Property and determination of the amount of tax to be assessed.

*Id.* at 858-59.

## B.    Proceedings Following Remand

After the Supreme Court issued its decision in *Wirth*, Taxpayer filed, or refiled, Pennsylvania PIT returns for tax years 1985 through 2005, reporting thereon his pass-through share of the operating losses of the Partnership during those years. (Joint Supplemental Stipulation of Facts ¶ 3(a) (dated Oct. 25, 2017).) The Court has reviewed copies of the returns filed under seal. As reflected in the parties' stipulations, the Partnership took deductions on its federal tax forms, including a deduction for the accrued but unpaid interest on the PMM Note, which contributed to the Partnership's annual operating loss and, consequently, zero tax liability from inception through foreclosure. (Joint Stipulation ¶¶ 40, 53, 54.)

Taxpayer reported on the filed/refiled Pennsylvania returns his pass-through share of the Partnership's "[n]et income (loss) from rental real estate activities," as reported to him by the Partnership on IRS Schedule K-1 (Form 1065)

15

for each of these years. Taxpayer disclosed these annual losses on his Pennsylvania Individual Income Tax Returns as Section 303(a)(4) class income—"Net gains or income derived from or in the form of rents, royalties, patents and copyrights." 72 P.S. § 7303(a)(4).[13]

Before the Board on remand, with respect to calculating the adjusted basis of the Property upon foreclosure, the parties' dispute focused on depreciation. Specifically, Taxpayer and the Department offered competing views on how to apply Section 303(a.2) of the Code, 72 P.S. § 7303(a.2). This section allows for a depreciation deduction against income: "In computing income, a depreciation deduction shall be allowed for the exhaustion, wear and tear and obsolescence of property being employed in the operation of a business or held for the production of income." Section 303(a.2) of the Code. It also provides how to calculate the adjusted basis of depreciated property:

> The basis of property shall be reduced, but not below zero, for depreciation by the greater of:
>
> (1) The amount deducted on a return and not disallowed, but only to the extent the deduction results in a reduction of income; and

[13] We acknowledge our view expressed in *Marshall I* that these pass-through losses should be classified as Section 303(a)(2) income under the Code. The import of doing so was to distinguish the pass-through operating loss from the Partnership's rental activities from Section 303(a)(3) income, which is the income at issue in this case. Neither Taxpayer nor the Department has fully briefed the question of whether the pass-through losses from the Partnership are subject to tax treatment under Section 303(a)(2) of the Code, as we indicated in *Marshall I*, or Section 303(a)(4) of the Code, as Taxpayer has classified them, nor did they do so when this matter was before us previously. Accordingly, our prior indications that the pass-through loss would be classed for tax purposes under Section 303(a)(2) should be considered, at most, *dicta*. The important and material point, however, remains. The pass-through operating losses of the Partnership, to the extent reported by the partners on their Pennsylvania returns, are not reportable under Section 303(a)(3) of the Code, and, therefore, are different in class and kind from the gain realized upon foreclosure of the Property, at least for Pennsylvania income tax purposes.

16

(2) The amount allowable using the straight-line method of depreciation computed on the basis of the property's adjusted basis at the time placed in service, reasonably estimated useful life and net salvage value at the end of its reasonably estimated useful economic life, regardless of whether the deduction results in a reduction of income.

Section 303(a.2) of the Code. Both parties refer to this provision as the "minimum straight-line depreciation provision," because regardless of the extent to which a taxpayer benefits from the allowable depreciation deduction, the basis of the depreciated property must be reduced, at a minimum, by the amount of depreciation allowable using the straight-line method of depreciation.

The parties' dispute centered around the effective date of the minimum straight-line depreciation provision. Section 303(a.2) was added to the Code by section 9 of Act 89 of 2002.[14] Section 34 of Act 89 of 2002 provides that Section 303(a.2) of the Code "shall apply to taxable years beginning after December 31, 2000." Taxpayer argued that this language meant that the minimum straight-line depreciation provision should only be applied for tax years 2001 and thereafter and, therefore, did not mandate a minimum downward basis adjustment for straight-line depreciation in years preceding the 2001 tax year. The Department offered a competing interpretation. In its view, Section 303(a.2) relates to the calculation of income. In this case, the income in question is the gain on disposition of the Property, which occurred in 2005. Accordingly, because the income event occurred after the effective date of Section 303(a.2), the minimum straight-line depreciation provision applied to calculate the adjusted basis of the Property from inception through foreclosure and, consequently, any gain upon disposition.

---

[14] Act of June 29, 2002, P.L. 559.

17

The Board refused to address Taxpayer's tax benefit rule argument, holding that this Court and the Pennsylvania Supreme Court ruled finally on the tax benefit rule's application in this case and that the tax benefit rule was not within the scope of the remand order. With respect to the depreciation issue, the Board sided with Taxpayer's interpretation. Taxpayer now appeals the Board's refusal to consider his tax benefit rule argument, and the Department appeals the Board's interpretation and application of Section 303(a.2) of the Code.[15]

## II.  DISCUSSION

### A.  Taxpayer's Appeal—Tax Benefit Rule

On appeal, Taxpayer renews the same arguments and themes that he raised in *Marshall I* with respect to the tax benefit rule, without addressing the several reasons why this Court rejected them. He then contends that in *Wirth* the Pennsylvania Supreme Court clearly adopted the tax benefit rule as the law of the Commonwealth, as reflected in the PIT Guide in effect at the time of the 2005 foreclosure on the Property. In support, Taxpayer cites this Court's decision in *Saturday Family L.P. v. Commonwealth*, 148 A.3d 931 (Pa. Cmwlth. 2016), *exceptions overruled*, 168 A.3d 400 (Pa. Cmwlth. 2017) (en banc), wherein we held that an agency was bound to follow its duly promulgated regulations. In Taxpayer's view, *Wirth* only required Taxpayer to file Pennsylvania income tax returns, showing a deduction for which he received no tax benefit in a

---

[15] Our standard of review in this matter is covered by Rule 1571 of the Pennsylvania Rules of Appellate Procedure. "Appeals taken from the Board of Finance and Revenue are *de novo* in nature, with no record being certified by the board." *Tool Sales & Serv. Co. v. Bd. of Fin. & Revenue*, 637 A.2d 607, 610 (Pa. 1993), *cert. denied sub nom. Tom Mistick & Sons, Inc. v. Pennsylvania*, 513 U.S. 822 (1994). "Although the Court hears these cases under its appellate jurisdiction, the Court functions essentially as a trial court." *Scott Elec. Co. v. Commonwealth*, 692 A.2d 289, 291 (Pa. Cmwlth. 1997), *exceptions dismissed*, 704 A.2d 205 (Pa. Cmwlth. 1998).

prior year, in order to avail himself of the tax benefit rule. He has now done that, by filing/refiling Pennsylvania PIT returns, showing his pass-through share of the Partnership's operating losses for which he received no Pennsylvania PIT benefit in prior years.

In response, the Department contends that nothing has changed since *Marshall I*. Although Taxpayer has since filed Pennsylvania PIT returns for the tax years preceding the year of the foreclosure, it was the Partnership that took an interest deduction on its tax returns all those years, not the partners. Taxpayer's filed/refiled returns merely capture his pass-through share of the Partnership's operating losses, which this Court already considered in *Marshall I* and the Pennsylvania Supreme Court considered in *Wirth*. The Department also highlights one of the reasons why this Court rejected application of the tax benefit rule in this matter. Allowing Taxpayer, through application of the tax benefit rule, to bring forward operating losses from prior year returns to offset income in later years would effectively create a net operating loss (NOL) carryover deduction for PIT, which does not exist in the Code.[16]

In reply, Taxpayer advances again his arguments in favor of applying the tax benefit rule in this situation. He contends that in *Wirth* the Supreme Court held that the tax benefit rule *could* be used to exclude accrued but unpaid interest from the amount realized at foreclosure, and that the partners needed only to file Pennsylvania PIT returns reflecting the loss to avail themselves of the rule in this case. They have since done that. Taxpayer acknowledges that the Partnership took the interest deduction on its federal returns and that this deduction contributed to the Partnership's overall losses, which flowed through to the partners. Taxpayer insists,

---

[16] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

19

however, that all *Wirth* requires is that he show some connection between the gain on foreclosure of the Property and his inability to use the prior losses of the Partnership to reduce his Pennsylvania PIT liability. He insists he has done that by filing/refiling returns showing his pass-through share of the Partnership's operating losses. Because he was unable to use those losses to offset income in prior years, the portion of those losses attributable to accrued but unpaid interest must be excluded from the amount realized on foreclosure of the Property in 2005.

The Board appropriately refused to consider Taxpayer's efforts to revisit his tax benefit rule argument on remand from the Pennsylvania Supreme Court. "[I]t has long been the law in Pennsylvania that following remand, a lower court is permitted to proceed only in accordance with the remand order." *Commonwealth v. Sepulveda*, 144 A.3d 1270, 1280 n.19 (Pa. 2016). In *Levy v. Senate of Pennsylvania*, 94 A.3d 436 (Pa. Cmwlth.), *appeal denied*, 106 A.3d 727 (Pa. 2014), which the Supreme Court cited with approval in *Sepulveda*, this Court explained: "Where a case is remanded for a specific and limited purpose, 'issues not encompassed within the remand order' may not be decided on remand. A remand does not permit a litigant a 'proverbial second bite at the apple.'" *Levy*, 94 A.3d at 442 (quoting *In re Indep. Sch. Dist. Consisting of the Borough of Wheatland*, 912 A.2d 903, 908 (Pa. Cmwlth. 2006)).

Here, the Supreme Court remanded "in accord with the Commonwealth Court's opinion for calculation of the adjusted basis in the Property and determination of the amount of tax to be assessed." *Wirth*, 95 A.3d at 858-59. In *Marshall I*, our remand was solely for the purpose of establishing "the adjusted basis of the Property at the time of foreclosure" and not for reconsideration of the amount realized. *Marshall I*, 41 A.3d at 98. If the Supreme Court intended to give

20

Taxpayer the opportunity to file amended returns, it would have vacated, not affirmed, our decision in *Marshall I*, and it would clearly have used different language in its mandate. Any further consideration of the amount realized by the Partnership upon the foreclosure, including reconsideration of Taxpayer's tax benefit rule argument, is beyond the scope of this Court's and the Supreme Court's remand orders. On this basis alone, we reject Taxpayer's appeal.

If, however, we were again to look at the tax benefit rule, we would reach the same conclusion as we reached in *Marshall I* and that the Pennsylvania Supreme Court reached in *Wirth*. First, as noted above, the amount realized in 2005 is the amount realized by *the Partnership* upon foreclosure of the Property, not each individual partner. In *Wirth*, the Pennsylvania Supreme Court, affirming this Court, held that the amount realized must include the amount of the debt satisfied at foreclosure, including principal and accrued but unpaid interest. In essence, the amount realized for Pennsylvania PIT purposes is the same as the amount that the Partnership realized from the foreclosure for federal income tax purposes. Taxpayer does not adequately explain why Pennsylvania should recognize a different amount realized for Pennsylvania PIT purposes than what the Partnership reported under the IRC.[17]

Second, we reject Taxpayer's claim that the Supreme Court in *Wirth* ruled that the tax benefit rule is part of Pennsylvania law and could be applied in this case only if the partners had filed Pennsylvania returns. To the contrary, the Supreme Court acknowledged only that *the Department* "seemingly" adopted the tax benefit rule in its PIT Guide and proceeded to analyze whether the rule should

---

[17] 26 U.S.C. §§ 1-9834.

21

be applied in this particular instance.[18] Clearly, the Supreme Court left open the possibility that it might adopt the tax benefit rule where the circumstances support it, perhaps even in a nonrecourse mortgage foreclosure situation. *Wirth*, 95 A.3d at 848 n.24. Contrary to Taxpayer's argument, however, the Supreme Court did not say that the rule could be applied to exclude accrued but unpaid interest from the amount realized from sale or disposition of property at foreclosure. The Supreme Court most definitely said that it could not: "[I]n our view, there simply can be no application of the tax benefit rule in this case." *Id.* at 848-49.

Third, as we noted in *Marshall I* and as the Supreme Court emphasized in *Wirth*, the tax benefit rule only applies where there is a deduction, without tax benefit, taken in a prior year with a recovery in a subsequent year. *Id.* at 846. Here, even considering Taxpayer's refiled returns for the tax years preceding 2005, we agree with the Department that Taxpayer did not take a deduction in prior years without tax benefit for which there was a recovery in 2005. The Partnership took the deduction for accrued but unpaid interest, leading to a net operating loss every year of its existence. That loss flowed through to the partners. Taxpayer has now filed returns showing his pass-through share of the operating loss as Section 303(a)(4) class income. While it is true that he received no tax benefit from that loss in prior years, that lack of tax benefit had everything to do with express

---

[18] The Supreme Court's phraseology appears to us to be intentional. As the Supreme Court noted in *Wirth*, the tax benefit rule is a *federal* common law principle, later codified in federal statute. In other words, it was created by a court and later enshrined in the law by an act of Congress. Here, there is no state statute or court opinion ensconcing the tax benefit rule in Pennsylvania law. Taxpayer cites this Court's decision in *Saturday Family L.P.* for the proposition that an agency is bound by its own regulations. As a legal principle, this is true. Here, however, Taxpayer does not cite to a Department regulation that correlates to the portion of the PIT Guide on which he relies, and the PIT Guide does not appear to be a regulation in and of itself.

22

limitations in governing Pennsylvania statutes (*i.e.*, the Code) and regulations and Taxpayer's lack of offsetting income of the same class in those prior years, not inequities created by the annual accounting system that prompted the creation of the tax benefit rule through federal common law. *See Marshall I*, 41 A.3d at 91 (citing *Hillsboro Nat'l Bank*, 460 U.S. at 377-79).[19]

Pennsylvania tax law is clear. Income/losses must be segregated by class under Section 303(a) of the Code, and losses may only be used to offset income of the same class in the same tax year (*i.e.*, they may not be carried over). The IRC does not have the same limitation and prohibition. Such incongruity warrants caution when a state court is asked to apply a federal tax principle, like the tax benefit rule, *carte blanche* to a state tax law scheme. *See id.* at 95 n.35. Refusing to address let alone acknowledge this conflict between state and federal tax law, Taxpayer continues to pound the proverbial square peg into the round hole. He fails to cite to any statute or regulation in Pennsylvania that authorizes or recognizes a deduction for accrued but unpaid interest expense to offset a gain from the disposition of property (Section 303(a)(3) class income) in the same year, let alone subsequent years. Putting aside for a moment the inability of Pennsylvania taxpayers to carry over unused losses/deductions from year-to-year for PIT purposes, if the tax benefit rule could even arguably apply in some context in Pennsylvania, the unused deduction in the prior year would at least have to have been eligible to offset the subsequent year gain. In other words, under Pennsylvania law the deduction would have to be an allowable offset against the gain had both been booked in the same tax

---

[19] *See also Marshall I*, 41 A.3d at 92 (providing example of how exclusionary tax benefit rule works to smooth out inequity caused by annual accounting system).

year. That connection is clearly absent in this case. *See Wirth*, 95 A.3d at 848-49 (holding tax benefit rule has no application in *this* case).

## B. The Department's Appeal—Adjusted Basis (Depreciation)

In its appeal, the Department challenges the Board's interpretation and application of the minimum straight-line depreciation provision in Section 303(a.2) of the Code. The Department contends that the provision is unambiguous. The Department's position is that the provision applies when computing *income* for tax years beginning after December 31, 2000. Because the tax year at issue in this case is 2005, the adjusted basis of the Property must be reduced, at a minimum, by straight-line depreciation back to the year the Partnership acquired the Property. Taxpayer responds simply that the minimum depreciation provision does not apply to tax years before 2001. Accordingly, as the Board concluded, imposing mandatory minimum straight-line depreciation for tax years before 2001 would be contrary to the General Assembly's intent. To the extent there is any doubt about the interpretation of the provision, Taxpayer insists that the section should be construed in his favor.

When interpreting a statute, this Court is guided by the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501-1991, which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa. C.S. § 1921(c).

24

"A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *Bethenergy Mines, Inc. v. Dep't of Envtl. Prot.*, 676 A.2d 711, 715 (Pa. Cmwlth.), *appeal denied*, 685 A.2d 547 (Pa. 1996). Finally, because Section 303(a.2) of the Code relates to the imposition of a tax, rather than an exclusion from taxation, the provision must be strictly interpreted in favor of the taxpayer. 1 Pa. C.S. § 1928(b)(3); *Greenwood Gaming and Entm't, Inc. v. Dep't of Revenue*, 90 A.3d 699, 710-11 (Pa. 2014).

Upon consideration of the Board's analysis and the parties' arguments on appeal, we conclude that both Taxpayer's and the Department's interpretations of the minimum straight-line depreciation provision in Section 303(a.2) and the effective date language in Section 34 of Act 89 of 2002 are reasonable. Accordingly, we conclude that the provisions, read together, are ambiguous. *Commonwealth v. Giulian*, 141 A.3d 1262, 1268 (Pa. 2016) ("When the parties read a statute in two different ways and the statutory language is reasonably capable of either construction, the language is ambiguous."). We agree with Taxpayer that, in this situation, the rules of statutory construction compel us to resolve the ambiguity in his favor. Accordingly, we will affirm both the Board's construction of the effective date language in Section 34 of Act 89 of 2002 and its application of the minimum straight-line depreciation provision in this matter.

### III. CONCLUSION

For the reasons set forth above, we affirm the Board's assessment of Taxpayer's PIT liability in all respects.

P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

25

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert J. Marshall, Jr.,             :
             Petitioner    :
                        :
        v.                 :    No. 863 F.R. 2015
                        :
Commonwealth of Pennsylvania,  :
             Respondent  :
                        :
Commonwealth of Pennsylvania,  :
             Petitioner    :
                        :
        v.                 :    No. 50 F.R. 2016
                        :
Robert J. Marshall, Jr.,             :
             Respondent  :

# **O R D E R**


AND NOW, this 2nd day of November, 2018, the order of the Board of Finance and Revenue is AFFIRMED.

Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.


                                                   _____

                                           P. KEVIN BROBSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert J. Marshall, Jr.,                      :
                    Petitioner              :
                                            :   No. 863 F.R. 2015
          v.                                :
                                            :
Commonwealth of Pennsylvania,                :
                    Respondent             :

Commonwealth of Pennsylvania,                :
                    Petitioner             :
                                            :   No. 50 F.R. 2016
          v.                                :
                                            :   Argued:  June 6, 2018
Robert J. Marshall, Jr.,                      :
                    Respondent             :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge


CONCURRING OPINION
BY JUDGE McCULLOUGH                          FILED:  November 2, 2018


         I join in the Majority's affirmance of the Board of Finance and

Revenue's application of section 303(a.2) of the Tax Reform Code of 1971[1]

concerning minimum straight-line depreciation.  However, I write separately to note

my concurrence as to its affirmance of the Board's refusal to apply the tax benefit

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of June 29, 2002, P.L. 559, 72 P.S. §7303(a.2).

rule to reduce the personal income tax (PIT) liability of Robert J. Marshall, Jr. (Marshall).

In my dissenting opinion in *Marshall v. Commonwealth*, 41 A.3d 67 (Pa. Cmwlth.) (en banc) (*Marshall I*), *exceptions overruled*, 50 A.3d 287 (Pa. Cmwlth. 2012) (en banc), *aff'd sub nom. Wirth v. Commonwealth*, 95 A.3d 822 (Pa. 2014), *cert. denied sub nom. Houssels v. Pennsylvania*, 135 S. Ct. 1405 (2015), I expressed the belief that the tax benefit rule should be applied to recognize the economic reality in this case, *i.e.*, Marshall lost his entire investment and did not recognize anywhere near the amount attributed to him. On the contrary, Marshall only realized $183,958.00, which is his pro rate share of the $121.6 million of accrued but unpaid interest that was used to offset income from operations that was subject to PIT. Under this scenario, Marshall would be subject to PIT in the amount $5,648.00. However, given the clear precedent by our Supreme Court refuting the use of the tax benefit rule in this case, I adopt the posture taken by Justice Sandra Day O'Connor in *Commissioner of Internal Revenue v. Tufts*, 461 U.S. 300, 317 (1983); *i.e.,* my preference is for "quite a different" approach if we were "writing on a clean slate."[2]

_____
PATRICIA A. McCULLOUGH, Judge

---

[2] *Tufts* and its predecessor, *Crane v. Commissioner*, 331 U.S. 1 (1947), established the notion that, for federal income tax purposes, the unamortized principal amount of a nonrecourse loan is to be included in the amount realized from a sale or disposition of the real estate. However, our United States Supreme Court in *Tufts* dealt with a specific provision of the Internal Revenue Code, section 1001 (26 U.S.C. §1001), and not any provision of the PIT. *Crane* is factually distinguishable as it involved the calculation of income tax on the sale of an apartment house which had been acquired by a taxpayer by bequest and subject to an unassumed mortgage.